THOMAS, Justice.
This action, by a real estate broker against an owner who employed him to sell certain property, was tried before the judge without a jury and the judge entered a judgment against the owner for the amount of the commission claimed. The owner is now appellant; the broker, appellee.
The commission for appellee’s services was to be paid for securing a purchaser upon the terms specified in the “Exclusive Listing.” The appellee found a purchaser who entered into an agreement with the owner to buy upon the stipulated terms subject to the condition, however, “that this property be approved for FHA Title Two loans * * The purchaser was to secure this approval and in the event he was unsuccessful, both he and the appellant were to be released from the contract. The appellant agreed to furnish an abstract of title and the usual conditions relative to curing defects were incorporated. The document, called a “deposit receipt,” constituting the contract between buyer and seller was signed 28 January 1953. Repeated requests were made for the abstract which appellant was obligated to furnish but no current abstract was forthcoming as late as 26 May 1953, and the appellant has never discharged this obligation. On that day the attorney for the buyer wrote the appellant that inasmuch as demands for an abstract had been ignored he proposed to order one and look to her for payment. He also got in touch with appellant’s attorney, 4 June 1953, with reference to the abstract and was then advised that the appellant had given her counsel the letter of 26 May and had instructed him to advise the buyer that she would not perform the contract because the FHA approval had not been given and because the property had increased in value. The buyer’s attorney wrote the appellant, 11 June 1953, acknowledging this information and saying that his client was willing to accept the property regardless of the FHA approval if the title was marketable.
In brief the appellee secured the purchaser; the condition about the FHA loan was incorporated for the purchaser’s benefit; the appellant failed to deliver a “complete abstract * * * showing * * * title to be good and marketable”; the purchaser agreed to waive the condition relative to FHA approval; the appellant sought to defeat the appellee in his effort to get his fee.
The appellant’s conduct appeals neither to our sense of justice nor to our understanding of the law. As Judge Milledge indicated there were two contracts, one between buyer and seller, one between owner and broker. Only the last is here directly involved, the other is incidental. When the appellant entered into the contract containing the provision relative to the FHA loans she did so voluntarily. In the circumstances of the appellee’s engagement by the appellant the inclusion of that provision, especially in view of the subsequent waiver of it, did not affect the obligation of the appellant to the appellee.
We think, as did the circuit judge, that the appellee fulfilled his contract when he produced the purchaser who entered into the agreement with the appellant, despite the condition about loans. That a contract was actually executed by buyer and seller did not affect the undertaking of the appellee only to procure a purchaser ready, willing and able to buy. Failure to consummate the sale, which we think was chargeable to the appellant, could not defeat the appellee’s claim. See Knowles v. Henderson, 156 Fa. 31, 22 So.2d 384, 169 A.L.R. 600. In the listing signed by the appellant he was commissioned “to find a purchaser” and was promised compensation for “finding a purchaser.”
Nor can we approve appellant’s position that inasmuch as part of the commission was to be paid upon ‘consumma *382 tion’ of the deal and portions of the balance upon payments of the first two installments of the purchase price, the appellant could recover nothing because no sale had been ‘consummated’. And we do not think there was any fundamental change in the original agreement by the subsequent letter signed by the seller amplifying it. The appellant claims that this letter converted the undertaking of the appellee from one to procure a purchaser to one to secure a binding contract of sale, simply because, after referring in some detail to the original document, it was stipulated that appel-lee was to be paid a commission “for making the sale * * We find in the language used in the papers no occasion to hold that such a transformation occurred.
The listing provided that the price should be a certain amount per acre upon the terms: “29% or less in cash; balance on or before one-two-three-four and five years in equal payments * * To this was added: “Commission 4% when deal is closed — 3% on payment of 2nd payment & 3% on payment of third payment.”
Appellant resorts to the rule announced in Seminole Fruit & Land Co. v. Rosborough-Weiner, Inc., Fla., 43 So.2d 864, to support his position that the appellee be paid nothing. Both in this decision and the one on which it was based, Langford v. King Lumber & Mfg. Co., 123 Fla. 855, 167 So. 817, were facts dissimilar to the ones here. In each instance a deed and mortgage had been exchanged and the property had been reconveyed to the seller, so that subsequent payments on the purchase price on which installments of the commission depended were never met. Flere no sale has been completed because, as we have said, the seller prevented it, Flart v. Pierce, 98 Fla. 1087, 125 So. 243. In view of appellant’s default no sale was ever made so the rule announced in Seminole Fruit & Land Co. v. Rosborough-Weiner, Inc., and Langford v. King Lumber & M'fg. Co., cannot assist her in her effort to escape her obligation to the appellee. The exception recognized in the former decision applies to this controversy.
Our examination convinces us that the judgment should be
Affirmed.
ROBERTS, C. J., and HOBSON and DREW, JJ., concur.