GILMER RICHARDSON, d/b/a I N T E R S T A T E
REALTY CO., Appellant, v. GUY G. SNIPES and
EOLA C. SNIPES, Appellees.

JAMES R. HALL et al., Appellants, v. GUY G. SNIPES
and EOLA C. SNIPES, Appellees. —330 S. W. (2d) 381.

Western Section, at Jackson. July 24, 1959.

Certiorari Denied by Supreme Court December 11, 1959.

496

Livingston, Vineyard & Sherman and John D. Walt, Memphis, for appellants.

Adrian Lowenthal, Memphis, and W. E. Wilroy, Hernando, Miss., for appellees.

BEJACH, J. These consolidated causes involve two separate suits filed in the Chancery Court of Shelby County, viz., that of Gilmer Richardson, d/b/a Interstate Realty Company v. Guy G. Snipes and Eola C. Snipes, No. 59960 R. D., in the Chancery Court, and that of James R. Hall, Eleanor S. Hall, Frank J. Hall, Jr. and Frank J. Hall, Sr., trustee for Sandra E. Hall v. Guy G. Snipes and Eola C. Snipes, No. 60116 R. D., in the Chancery Court. Said suits were tried separately in the lower court, but were consolidated for appeal. Both arise out of the same contract, same being a contract for the sale of real estate executed under date of October 30, 1957. The suit of Gilmer Richardson is for a real estate broker's commission on land owned by defendants, Snipes, which was to have been conveyed as part payment for the land purchased by them from the Halls; and the suit of the Halls is for breach of said contract. The Halls sue for damages for breach of the contract, or in the alternative, for specific performance.

For convenience and simplicity, the parties will be referred to as Richardson, Snipes, and the Halls, except where specific identification of one or more of the individual parties is required.

The contract involved was negotiated by and through the office of Gilmer Richardson, d/b/a Interstate Realty Company, under date of October 30, 1957. It provides for the purchase by the Snipes from the Halls of the "Josephine Plantation", containing about 1,000 acres in Bolivar County, Mississippi, in part payment for which the Snipes agreed to transfer to the Halls real estate in Memphis, Tennessee identified as No. 3845 Jackson Avenue. Possession was to be given on or before January 1, 1958. The contract contains a clause which is the basis of the controversy in this law suit and disposition of which is determinative of the outcome of same. Said clause is as follows:

"The consummation of this contract is contingent upon the first three hundred feet east of Jackson Avenue of the property located at 3845 Jackson Avenue, Memphis, Tennessee being zoned commercial."

The facts of the case are practically undisputed, most of them having been stipulated. Pending the appeal, Gilmer Richardson died and the cause, as to him, has been revived, by a consent order in the name of Kathryn Madelyn Richardson, administratrix cum testamento annexo of the estate of Gilmer Richardson, deceased.

The suit of Richardson v. Snipes was filed December 30, 1957 and that of the Halls v. Snipes, February 28, 1958. As stated, both suits grew out of the same contract, and the determinative facts applicable to both suits are the same. Except where separate discussion is necessary, both suits will be discussed together.

In the late summer or early fall of 1957, the Halls employed Richardson for the purpose of selling the

"Josephine Plantation." Advertisements were run in local newspapers and during the month of October 1957, Snipes answered one of the advertisements. Subsequent negotiations resulted in the signing of the contract dated October 30, 1957. This contract was signed by both Mr. and Mrs. Snipes and by all of the Halls. The "Josephine Plantation" was to be sold for $140,000, payable in ten annual installments, in addition to conveyance of the Jackson Avenue property belonging to the Snipes; and it was agreed that both the Halls and the Snipes were to pay real estate commissions, each on the property to be conveyed by them. The commission claimed by Richardson from Snipes is $3,375 and it is stipulated that such commission is both fair and reasonable.

After the signing of the contract, the Halls dismissed the manager of the "Josephine Plantation" and began selling off equipment used thereon. About November 9, 1957, the parties to the contract reached an understanding as to the rice allotment and cotton allotment for the "Josephine Plantation", and agreed that Snipes might remove certain quail and pheasant pens and fences from the Jackson Avenue property in Memphis. On or about November 14, 1957, Snipes employed competent counsel to have the Jackson Avenue property rezoned commercial; but it was realized by all parties to the contract by the weekend of Thanksgiving Day which was November 28, 1957, that the rezoning of the Jackson Avenue property could not be completed prior to January 1, 1958; whereupon Guy G. Snipes requested Dr. Frank G. Hall, Sr. to waive the rezoning condition. Dr. Hall said he would consider the matter and confer with the other interested parties. Without waiting for a reply from Dr. Hall, however, by registered letter dated December

4, 1957, Guy G. Snipes advised the Halls and Richardson that, because of impossibility of performance of the condition, he considered all parties to the agreement discharged from further liability thereunder, and that he was treating the contract as at an end. By letter dated December 6, 1958, attorneys for Richardson and for the Halls advised Snipes that the condition was solely for the benefit of the Halls and that same was waived. This waiver was repeated by another letter under date of December 12, 1957 sent by registered mail. On the 18th day of December, 1957, Snipes acquired by purchase approximately 4,100 acres of farm land in DeSoto and Tunica Counties, Mississippi at a purchase price of $660,000; and by amended bill in the Richardson case, filed Jan. 21, 1958, it was alleged that the sole purpose of the breach of contract was to avoid the payment of a real estate commission by Snipes and to enable him to purchase the property in DeSoto County and Tunica County, Mississippi. A similar allegation was made by amended bill in the Hall case filed April 19, 1958. In addition to the stipulations of facts filed in these causes oral proof was heard; and it is apparent from the testimony of Guy G. Snipes that he had been negotiating for the purchase of the DeSoto and Tunica Counties property prior to his letter of December 4, 1957 by which he undertook to cancel the contract here involved.

The Chancellor held that, at and prior to the time of the writing of the letter of December 4, 1957 by which Snipes undertook to cancel the contract, the parties were met by an "objective impossibility" which prevented the consummation of the contract and that the parties thereto were no longer bound by it. He held that Snipes was within his rights when he cancelled same, that his

request for a waiver of the condition in the contract requiring that the Jackson Avenue property in Memphis, Tennessee be zoned commercial, amounted to no more than an offer on his part to perform the contract if said condition was waived, which offer he had a right to withdraw before it was accepted, and that his letter of December 4, 1957, declaring the contract at an end, having been written and delivered prior to the waiver of the condition by the Halls, terminated any liability on the part of Snipes either for commission to Richardson, under the contract, or to the Halls, for specific performance or damages.

Final decrees were entered dismissing both the suit of Richardson for real estate broker's commission, and that of the Halls for breach of the contract of sale. As stated above, the two causes were then, by agreement and by order of the Chancellor, consolidated for the purpose of appeal. Both Richardson and the Halls prayed and perfected appeals, and one record covering both causes has been filed in this Court.

Four assignments of error have been filed here. We deem it unnecessary to copy these assignments into this opinion, or to discuss them separately. They present adequately the contentions of appellants; and, in our opinion, both appeals must stand or fall, depending on whether the Chancellor was right or wrong in his ruling that Snipes was released because of "objective impossibility" and that the waiver by the Halls of the condition requiring commercial zoning of the Jackson Avenue property came too late.

In our opinion, the learned Chanceller was clearly in error. The condition requiring commercial zoning of the

Jackson Avenue property in Memphis was obviously and exclusively for the benefit of the Halls; and, when they waived that condition prior to the time for performance of the contract, which was to be on or before January 1, 1958, the situation was, in legal contemplation, the same as if such condition had never been in the contract. The contract was a valid contract, the consideration for which was the reciprocal promises of the parties thereto. The fact that the obligation to perform, on the part of the Halls, was conditional, is immaterial. We quote from Williston on Contracts, sec. 103f, as follows:

"A conditional promise is sufficient consideration. The performance of such a promise does not necessarily involve either detriment or benefit, since the condition upon which any action of the promisor is to take place may not happen. But the possibility that the condition may happen, involves a chance of detriment which is sufficient to make the promise valid consideration."

From the opinion of the Supreme Court of Tennessee in Dark Tobacco Growers' Coop. Ass'n v. Mason, 150 Tenn. 228, 250-251, 263 S. W. 60, 67, written by Mr. Justice Hall, we quote as follows:

"It is next insisted that the contract is unilateral and lacks mutuality.

"In Texas Seed Co. v. Chicago Co. (Tex. Civ. App.), 187 S. W. 747, the court said:

" 'Generally, there is mutuality of obligation where both parties undertake to do something. A contract does not lack mutuality merely because ev-

ery obligation of the one party is not met by an equivalent counter obligation of the other.'

" 'Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other.' Campbell v. American Co., 117 Mo. App. 19, 94 S. W. 815.

"In St. Louis Co. v. Clark, 90 Ark. 504, 119 S. W. 825, the rule is announced to the same effect.

"To the same effect are our own cases of Cherry v. Smith, 3 Humph. (22 Tenn.) 19, 39 Am. Dec. 150; Fourth Nat. Bank v. Stahlman, 132 Tenn. 367, 178 S. W. 942, L. R. A. 1916A, 568; Farabee-Treadwell Co. v. Bank & Trust Co., 135 Tenn. 208, 186 S. W. 92, L. R. A. 1916F, 501.

"It is invariably held that the promise of one party is valid consideration for the promise of the other party."

More specifically, on the question involved in the instant case, viz., that the obligation of the Halls to perform the contract here involved was based on a condition, whereas that of the Snipes was not, we quote from Williston on Contracts, sec. 112, as follows:

"As has been seen, an offer is a conditional promise; that is, a promise to take effect only if the exchange demanded for it is given. But the promise in an offer may be subject to other conditions than the giving of the requested consideration. Thus, an offer to insure property in exchange for a premium is a promise to pay insurance money in case the building insured is destroyed if a premium is paid.

A conditional promise may be sufficient consideration, and 'when a man acts in consideration of a conditional promise, if he gets the promise he gets all that he is entitled to by his act, and if, as events turn out, the condition is not satisfied, and the promise calls for no performance, there is no failure of consideration.' "

"A contract is not deprived of mutuality by reason of the fact that the liability of both parties is contingent on the happening of a condition precedent." 17 C. J. S. Contracts sec. 100, p. 447.

With reference to the right of a party to a contract to waive a condition, failure to waive which would relieve such party from obligation under the contract, we quote from 12 Am. Jur., Contracts, Sec. 354, pp. 918-919, as follows:

"The term 'waiver' has many meanings. It is frequently defined as the voluntary relinquishment of a known right. It is said that to be effectual a waiver of a stipulation in an agreement must not only be made intentionally, but with knowledge of the circumstances. This is said to be the rule not only where there is a direct and precise agreement to waive the stipulation, but also where it is sought to deduce a waiver from the conduct of the party.

"Strict and full performance of a contract by one party may be waived by the other party. Conditions precedent may be waived by the party in whose favor they are made. Thus if a party to a contract who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispenses with the performance, the oppo-

site party is excused from proving a strict compliance with the condition. A defense may also be waived.''

From the opinion of the Court of Appeals, Eastern Section, in the case of Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Pub. Co., 42 Tenn. App. 92, 298 S. W. (2d) 788, 793, we quote as follows:

"Admitting that the defendant, under the provisions of the contract, reserved the right to approve or reject advertising, as insisted, did the action of defendant's agent in turning over to Doyle a copy of the signed contract with assurances that the ad was acceptable and would be run, constitute a waiver of the conditions? Under the circumstances, we think that the issue of whether there was a waiver was for the determination of the jury, 56 Am. Jur. sec. 23, p. 125; 17 C. J. S. Contracts sec. 630, pp. 1297, 1298, and under our decisions we are bound by the verdict.

"It seems to be the rule generally that strict performance of a contract by one party may be waived by the other party, and conditions precedent may be waived by the party in whose favor they are made. 12 Am. Jur. sec. 354, pp. 918, 919; 17 C. J. S. Contracts sec. 491, pp. 992, 993.''

In the instant case, the fact that the Halls did waive the condition precedent is stipulated. The only question is whether or not such waiver came in time; and we hold that they had until January 1, 1958 to make such waiver. After that date, the waiver would probably have come too late. On that date, if the Halls had not waived the condition, they could, of course, have refused to consum-

mate the transaction, which, in turn, would have excused the Snipes from performing on their part. In other words, the failure or refusal of the Halls to waive the condition precedent might have been used by them as a shield, but not as a sword; and, conversely, the Snipes would have been entitled to use the failure or refusal of the Halls to waive the condition precedent as a shield but not as a sword.

The Chancellor based his decision in the instant case on the authority of Village of Fort Edward v. Fish, 86 Hun 548, 33 N. Y. S. 784, 786. In that case, the Village of Fort Edward had contracted with the defendant, Fish, to sell to him for $50,000 bonds in that amount issued by said village, together with accrued interest thereon from May 1, 1893. The accrued interest amounted to $444.44. The contract contained the following condition: "This agreement is not binding on the party of the second part (Fish) unless Miller, Peckham and Dixon of 80 Broadway, New York approve of the regularity and validity of said bonds in writing." Miller, Peckham and Dixon refused to certify the regularity and validity of said bonds, and the Village of Fort Edwards was so notified; whereupon, it sent a telegram to Fish withdrawing from the contract. Fish then undertook to waive the requirement of the certifying opinion of Miller, Peckham and Dixon and insisted on delivery of the bonds as provided for in the contract. The controversy was settled by compromise under the terms of which the Village of Fort Edward paid to Fish the sum of $1,750 for the privilege of being released from its contract. Subsequently, the Village of Fort Edward brought suit against Fish to recover the $1,750 so paid, contending that it was an unauthorized payment. The Supreme Court (which is

not the court of last resort in New York), decided in favor of the Village of Fort Edward. It held that the entire transaction was illegal and void because the statute under authority of which the bonds were issued prohibited the sale of such bonds below par, and that the contract with Fish which entitled him to have for $50,000, $50,000 of bonds, plus $444.44 of accrued interest, constituted a sale of the bonds below par, which made the entire transaction illegal and void. The Village of Fort Edward was accordingly held to be entitled to recover the $1,750 paid in compromise. It is true, the New York Supreme Court, as an additional ground for its decision, did use the language relied on by the learned Chancellor for his decision of the instant case. Same is as follows:

"Again, under the contract of July 20th, defendant was not compelled to take the bonds unless the regularity and validity thereof was first certified to by Miller, Peckham & Dixon. The latter, after several interviews and communications with plaintiff's agents, declined to certify to the regularity and validity of said bonds. When plaintiff's agent, on the morning of July 28, 1893, was informed of such refusal, plaintiff, then, if not before, was freed from any obligation to defendant under the contract. Miller, Peckham & Dixon refused to certify in writing the regularity of the bonds, nor does it appear that they have ever made such certification. Therefore, under the contract, by its very terms, on July 20, 1893, the defendant was not bound to take the bonds. It follows that plaintiff was not bound to deliver them. The doctrine that 'It is not just that one party should be bound when the other is not' is well established. Routledge v. Grant, 3 Carr. & Payne, 267-

273; Rathbone v. Warren, 10 Johns., N. Y., 587-594; King v. Warfield, 67 Md. 246, 9 A. 539.

"It is true that the provision requiring the approval of Miller, Peckham & Dixon was for the benefit of defendant, and probably could have been waived by him. But he did not make such waiver until after plaintiff, as it lawfully might, had acted on the assumption that the contract was at an end. The waiver was too late. After the final refusal of Miller, Peckham & Dixon, of July 28th, to approve the regularity and validity of the bonds, if not before, plaintiff's position was like that of one who has made an offer before the acceptance thereof. Plaintiff offered the bonds to defendant at a certain price. He accepted if Miller, Peckham & Dixon approved in writing the regularity and validity of the bonds. Miller, Peckham & Dixon refused such approval. Plaintiff, therefore, had made an offer to defendant to sell the bonds to him, which offer remained unaccepted. Prior to acceptance, a party making an offer may withdraw it. See Chicago & G. E. Railroad Co. v. Dane, 43 N. Y. 240; Tars. Cont. 481."

Aside from the fact that the opinion in the case of Village of Fort Edward v. Fish, 86 Hun 548, 33 N. Y. S. 784, is that of the Supreme Court and not of the New York Court of Appeals, its court of last resort, we think the language quoted may properly be treated as dictum, because the court had already held the entire transaction to be illegal and void because of the attempted sale of the bonds by the Village of Fort Edward below par.

On the other side of the question here involved, counsel for appellants cites and relies on the cases of Miller v.

Moylan, Fla., 72 So. (2d) 380, 381; Noble v. Garvens, 196 Wis. 308, 219 N. W. 954; and Funke v. Paist, 356 Pa. 594, 52 A. (2d) 655, all of which cases are substantially like the case at bar in that conditions in contracts inserted for the benefit of one of the parties thereto, which were subsequently waived, left the other parties bound. Miller v. Moylan and Noble v. Garvens were cases in which the real estate broker was permitted to recover his commission, which would make them in all respects analogous to the instant case of Richardson v. Snipes. In Funke v. Paist, specific performance was decreed in favor of the party who had waived the condition, which makes it analogous to the suit of the Halls v. Snipes.

In Miller v. Moylan there was a sale of land conditioned on said land being approved for F. H. A. loans. When it was not so approved, the seller, as did Snipes in the instant case, undertook to repudiate the contract; but the purchaser waived the condition and expressed a willingness to accept conveyance of the property notwithstanding the failure to get approval of F. H. A. loans on same. The real estate broker then sued for his commission and recovered. In affirming the judgment of the lower court, the Supreme Court of Florida said:

"The appellant's conduct appeals neither to our sense of justice nor to our understanding of the law. * * * When the appellant entered into the contract containing the provision relative to the F. H. A. loans she did so voluntarily. In the circumstances of the appellee's engagement by the appellant the inclusion of that provision, especially in view of the subsequent waiver of it, did not affect the obligation of the appellant to the appellee." Miller v. Moylan, Fla., 72 So. (2d) 380, 381.

In Noble v. Garvens, after a contract for the sale of land had been entered into, a power company began condemnation proceedings to acquire a right-of-way across the land. The seller then undertook to repudiate the contract on the ground of impossibility of performance, the contract having provided for a conveyance of the land free from encumbrances. The purchasers expressed a willingness to accept the land subject to the condemnation proceeding and to protect the seller from liability. The real estate broker then sued for his commission and recovered. In its decision in favor of the broker, the Supreme Court of Wisconsin said:

"It clearly appears from the evidence that plaintiff earned his commission by producing a purchaser of the farm, according to his agency contract with defendants, and the purchasers were willing to accept title to the farm subject to the condemnation proceedings, and to protect defendants from liability thereon.

"Such being the case, the defendants may not successfully claim that they were unable to perform because of conditions beyond their control. No such conditions existed. They could perform to the satisfaction of the purchasers produced by plaintiff, and the fault lay entirely with the defendants that the sale was not made. Plaintiff should not suffer by such failure.

"The questions of law presented are quite beside the mark. The matter to be decided is one of fact and good faith. Defendants are liable for the commission earned by plaintiff under the contract." Noble v. Garvens, 196 Wis. 308, 219 N. W. 954.

In the case at bar of James R. Hall, et al. v. Guy G. Snipes et ux., the prayer of the bill is for $60,000 claimed as damages for breach of the contract, and only in the alternative for specific performance, and ''in the event the court should find it more equitable to specifically enforce said contract.''

In the course of the argument of this cause, counsel for appellants argued that specific performance should be granted in the instant case, and urged in support of that argument, that, although Snipes had in February 1958 conveyed the Jackson Avenue property at a valuation of $60,000 in connection with his purchase of the DeSoto and Tunica Counties, Mississippi property, the grantee of that conveyance could have no rights superior to those of the Halls in the instant case, because, on December 10, 1957, the contract here involved had been recorded in the Register's Office in Shelby County, Tennessee in Book 3928, page 311. It does appear in the stipulation of facts filed in the Hall case that the subject contract was so recorded. The only copy of the contract in question which we have found in the record, however, shows no acknowledgement thereon which would permit same to be recorded. Even if another copy of same with acknowledgements of some or all of the Halls is so recorded, we doubt if, under our registration laws, same would be efficacious against any grantee of Snipes, in the absence of an acknowledgement thereon by Snipes. It is not necessary for us to decide this question, however, especially in view of the fact that the primary prayer of the Hall bill is for damages for breach of the contract, only; and, under our holding that the contract was breached by Snipes, and especially in view of the primary prayer for damages only, the Halls are entitled to a

reversal in this case. The question of damages or other relief was reserved pending the appeal; and even if, as in the case of Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 42 Tenn. App. 92, 298 S. W. (2d) 788, complainants should be held entitled to nominal damages only, they would still be entitled to have this cause remanded for the purpose of the reference.

■■ The right of the Halls, after waiving the condition in the contract inserted for their benefit, to sue for damages for breach of said contract, even if they may not be entitled to enforce specific performance of same, is, in our opinion, completely analogous to and entirely in harmony with the well-settled rule that where a contract is entered into for the sale of land and the seller is unable to convey all of the land contracted for, the buyer may, nevertheless, enforce specific performance for that portion which the seller can convey, together with compensation for that portion which the seller cannot convey. In the case of Chas. B. James and & Invest. Co. v. Vernon, 129 Tenn. 637, 168 S. W. 156, 52 L. R. A., N. S., 959, the Supreme Court of Tennessee enforced that rule in favor of a seller who was unable to convey all of the land contracted for, where he offered to do equity by paying the reasonable value of that portion of the land which he was unable to convey.

■■ In the case of Gilmer Richardson v. Snipes, it is contended that complainant is entitled to no recovery because of a provision in a collateral agreement evidenced by a letter from Guy G. Snipes and Eola C. Snipes to Gilmer Richardson dated October 30, 1957 which provides that the real estate commission of $3,375 to be paid to Richardson shall be paid $1,000 one year from the closing of the sale, with interest of 5% from date, and

the balance of $2,375 to be paid two years from the closing of said contract, with interest at 5% from date; said commission notes to be secured by a second mortgage on the Bolivar County land; which letter contains the specific provision, "Above sale must be consummated for commission to be due, if sale is not consummated then this becomes null and void." That, in our opinion, would have constituted a good defense if the consummation of the transaction had failed without any fault on the part of Snipes. On the record before us, however, it is clear that the failure to consummate the transaction was due entirely to the fault of Snipes and that his conduct amounted to bad faith. Evidently the learned Chancellor drew no such inference from the fact that even before he repudiated the contract here involved, he had been negotiating for the purchase of another tract of land containing 4,100 acres, which tract of land was actually conveyed to him December 18, 1957. To this court, however, the conclusion is inescapable that his other deal for real estate in Mississippi was the motivating cause of the repudiation by Snipes of the contract sued on in the instant case by both Gilmer Richardson and the Halls. He cannot be permitted to take advantage of his own wrong. The bad faith of Guy G. Snipes in thus negotiating for and purchasing other Mississippi land, and then, because of his purchasing same, repudiating his contract for purchase of the "Josephine Plantation", is demonstrated by his testimony given on cross-examination, when interrogated about that transaction. From that cross-examination we quote, as follows:

"Q. Mr. Snipes you are presently the owner of some property in Mississippi, I believe, is that correct? A. Partially, yes.

"Q. What do you mean by partially? A. Well, I have an equity in it.

"Q. You have a deed to it don't you? It's in your name? A. Yes, sir.

"Q. How large a tract of land is that? A. About 4100 acres.

"Q. About four times as large as the piece you were trying to buy? A. You are referring to the Hall property?

"Q. Yes. A. Yes, sir.

"Q. When did you contract to buy that property? A. I have the deed here with us. . I believe you can look at it.

"Q. Do you remember when it was?

"Mr. Lowenthal: Your Honor, we have stipulated on this.

"Mr. Walt: I think that is true, and I will tell you, Mr. Snipes, that—your deed is dated 18th day of December 1957.

"By Mr. Walt (Continuing):

"Q When did you begin negotiations for that piece of property? A. I don't remember.

"Q. Well, was it a month before or two months before or ten days before or on the afternoon before? A. Well, I believe that this is dated—

"Q. The day that you looked at it? A. Yes, sir. The deed was not signed until in February.

"Q. Of course, this law suit was filed of record before the deed was filed? A. Well, I would have the right to buy two pieces of property if I wanted to.

"Q. I am not arguing with you. You may buy three or four. My question was, When did you begin negotiations for this and you said the 18th day the day the deed is dated. You bought a 4100 acre farm on one day's notice? A. I didn't say that. I said it could have started on that date.

"Q. I asked you when? A. I don't remember the date.

"Q. I am sure you don't, and I wouldn't either if I were you, but I am asking you to tell me approximately how long before. A. Approximately three or four weeks.

"Q. And you were talking about it before you voided this contract? A. Could have been.

"Q. Well, you definitely would have been if you talked over two or three weeks? A. But I don't get the point what this has got to do with this contract.

"Q. You let me get to the points, and you just answer questions, please. A. All right, sir.

"Q. Now, when did you do down to Mississippi and try to get your financing arranged for the Hall property? A. I never made such a trip in my life.

"Q. You never needed any financing? A. I never said that. I never made no trip to Mississippi. I never told him about making a trip for financing purposes.

"Q. Nobody said that—how did you anticipate that? A. I heard you question a witness here that said I told them that, and I didn't.

"Q. I didn't ask about that. A. Yes, you did.

"The Court: Don't argue. Just answer the questions.

"By Mr. Walt: Mr. Snipes, had you made arrangements for your financing on your property in Mississippi when you entered into this contract? A. You mean the Hall property?

"Q. The Hall property. A. I never made a contract there yet.

"Q. I don't follow you. You mean you never went through with the contract? A. It never was turned over to me, so I didn't have any reason to make arrangements for financing.

"Q. And would you have waited until the property was turned over to you to make arrangements for financing? A. Certainly."

The only reasonable inference which we can draw from such testimony of Snipes is that he knew that he had been guilty of bad faith. We hold that he has; and it is our opinion that he was trying to evade the issue. One of the maxims of equity is, "No one can take advantage of his own wrong." Gibson's Suits in Chancery, 5th Ed. sec. 60.

In the case of Chambers v. Percefull, 28 Tenn. App. 517, 191 S. W. (2d) 568, 569, the Court of Appeals, Eastern Section, in an opinion written by Burnett, J. (now Mr. Justice Burnett of the Supreme Court), reversed a

decision of the Chancery Court of Knox County which had dismissed complainant's suit for commission. From that opinion, we quote as follows:

"In the present state of this record * * * complainant was the procuring agent who brought these parties together and secured a purchaser at a price acceptable to the seller.

"Under these facts as heretofore detailed we think the complainant was certainly entitled to a reasonable time within which to complete the contract. A seller should not be allowed to escape liability to the broker for his reasonable compensation by entering into a contract with another when the seller has knowledge of the broker's actions and promises him she would accept the fruits of his labors.

" 'In line with this view, it is held that the principal cannot defeat the broker's right to compensation by revoking his authority in the midst of negotiations, at least where there is strong likelihood of the negotiations being successful. Certainly commissions are due where, pending negotiations, the owner fraudulently or in bad faith revokes the agency and closes the deal with the person negotiated with by the broker. Although, according to other authorities, the principal may revoke the broker's authority while negotiations by the latter with a prospective purchaser are still in progress, provided he does so in good faith, nevertheless, where the broker's agency to sell is terminated on the eve of its successful culmination, the time of revocation is a strong indication of bad faith on the part of the owner, and unless the inference is rebutted by evidence the owner

will be held liable for commissions.' 12 C. J. S. Brokers sec. 66, Subsec, c, page 154.'' Chambers v. Percefull, 28 Tenn. App. 517, 520-521, 191 S. W. (2d) 568.

To the same effect is Hammond v. Herbert Hood Co., 31 Tenn. App. 683, 221 S. W. (2d) 98. See also Parker v. Walker, 86 Tenn. 566, 8 S. W. 391; Cheatham v. Yarbrough, 90 Tenn. 77, 15 S. W. 1076; and Bell v. Strauch, 40 Tenn. App. 384, 292 S. W. (2d) 59.

It results that the decrees of the learned Chancellor in both of the consolidated causes before us will be reversed. In the case of Gilmer Richardson v. Guy G. Snipes and Eola C. Snipes, a decree will be entered in this court in favor of Kathryn Madelyn Richardson, administratrix cum testamento annexo of the estate of Gilmer Richardson for $1,000 as of January 1, 1959, with interest until paid at 5% per annum from January 1, 1958, the date on which the contract here involved should have been consummated, and for $2,375, payable January 1, 1960, plus interest at 5% per annum from January 1, 1958 until paid. In the case of James R. Hall, et al. v. Guy G. Snipes and Eola C. Snipes, the decree of the Chancellor will be reversed and the cause remanded to the Chancery Court of Shelby County, Tennessee for a reference to the Clerk and Master for the purpose of ascertaining the amount of damages recoverable by complainants and/or for such other relief as they may be entitled to have granted to them.

The costs to date, including those of the lower court as well as those of the appeal, will be judged against the appellees, Guy G. Snipes and Eola C. Snipes, his wife.

Avery, P. J. (Western Section), and Carney, J., concur.