GRIMES, Judge.
The appellants (hereafter called Ginsburg) originally had a contract to purchase land from James J. Regan, as trustee, for $525,000. Subsequently, Ginsburg entered into a contract with the appellee (hereafter called Motsinger) whereby Ginsburg sold Motsinger his interest in the Regan contract. The portions of the second contract pertinent to this appeal are set forth below:
“2. The purchase price for The Contract is One Hundred Twenty Five Thousand Dollars ($125,000.00), payable as follows:
(a) At time of closing, Buyer shall pay to Seller in cash Seventy Five Thousand Dollars ($75,000.00) upon which the above deposit shall apply as a part. At closing Broker shall deliver the $25,000.00, to Seller. It is understood and agreed that Seller has deposited $25,000 on the contract attached hereto as Exhibit '‘A’ and said $25,000, deposit shall hereupon become a credit to Buyer.
(b) At closing, Buyer shall execute and deliver to Seller a promissory note in the amount of Fifty Thousand Dollars ($50,000) bearing interest at the rate of 7% until paid. The principal of said note and interest thereon shall be payable when a minimum of 100 acres of the property described in The Contract is rezoned so as to allow mobile homes on the subject property. Said note shall *510 provide that if such rezoning is not accomplished within two (2) years from September 2, 1971, that there will no longer be any obligation under said Note. Seller agrees to use its best efforts to obtain such rezoning, and will pursue such rezoning forthwith. Except as above provided, said note shall be in form reasonably acceptable to Seller.
(c) Buyer further agrees that at the time of closing Buyer will execute, acknowledge and deliver to Seller a recordable document in form satisfactory to Seller agreeing that at the time Buyer acquires title to the land described in The Contract Buyer will execute, acknowledge and deliver to Seller a mortgage on said property to secure the above-referred to Note. Said agreement shall be binding upon any assignees of Buyer and shall be recorded in the public records of Manatee County. Buyer shall be responsible for the payment of documentary stamps on the Note and intangible tax on the mortgage. It is understood that said mortgage shall be a second mortgage.”
The Ginsburg-Motsinger transaction was closed on June 8, 1971. The Regan contract was assigned by Ginsburg to Motsinger, and Motsinger gave Ginsburg $75,000 cash and a $50,000 promissory note. The note was due and payable on or before September 2, 1973, and specified that it was conditioned upon the terms of the contract which were incorporated therein by reference. No “recordable document” required by paragraph 2(c) of the contract was delivered by Motsinger to Ginsburg. In August of 1971, Motsinger consummated the purchase of the land from Regan.
Motsinger did not give Ginsburg the second mortgage contemplated by paragraph 2(c) of the contract. None of the subject property was zoned to allow mobile homes. However, upon the petition of Motsinger, the property was rezoned on June 13, 1972, from agricultural to commercial and mul-ti-family use.
Ginsburg brought suit on November 13, 1972, alleging the refusal of Motsinger to execute the mortgage. The complaint prayed alternatively for an equitable lien, specific performance and damages. Mot-singer moved for summary judgment. The court deferred hearing on the motion until after September 2, 1973. Thereafter, a summary judgment was entered in favor of Motsinger and Ginsburg appeals.
If Ginsburg, without a legally justifiable excuse, failed to obtain the mobile home zoning within the two-year period, he would not be entitled to any relief. However, Ginsburg testified on deposition that the reason he didn’t go forward with trying to obtain the requisite zoning was because on several occasions Motsinger instructed him not to do so. The truth of these statements is controverted by Mot-singer, but if they are material, a genuine issue of fact would exist.
Motsinger argues that that portion of the contract dealing with the $50,000 payment was an independent covenant such that the only consideration for the note was the rezoning of the land to allow mobile homes. Thus, when Ginsburg failed to “forthwith” seek rezoning and when September 2, 1973, passed without the zoning having taken place, this is said to constitute a total failure of consideration.
We think that paragraphs 2(b) and 2(c) should be considered in the context of the entire transaction. Motsinger was buying land for a total price of $650,000. He must have felt that the land would be worth $50,000 less to him if one hundred acres were not rezoned for mobile homes. The provision for rezoning was a condition included in the contract for the benefit of Motsinger. As a general rule, a rezoning provision in a contract to purchase land may be waived by the party for whose benefit it was inserted. Barnes v. Euster, 1965, 240 Md. 603, 214 A.2d 807; Richardson v. Snipes, 1959, 46 Tenn.App. 494, 330 S.W.2d 381; and Godfrey Co. v. Crawford, 1964, 23 Wis.2d 44, 126 N.W.2d 495.
*511 In Gilman v. Butzloff, 1945, 155 Fla. 888, 22 So.2d 263, the plaintiff sought damages for breach of a contract to purchase a hotel, alleging, inter alia, that the defendants had wrongfully withheld possession of the property. The defendants interposed the defense of waiver. The defendants said that the plaintiff had accepted the deed to the property subject to the occupancy of the tenants then in possession, thereby waiving his right to objection. The plaintiff challenged this defense on the ground that it improperly set up a pa-rol modification of a written Agreement. The Supreme Court held that the defense was properly raised and said:
“There was substantial evidence in the record to prove the waiver of that part of the contract relied upon for recovery. In Masser v. London Operating Co., 106 Fla. 474, 145 So. 79, 84, we held:
‘A waiver of a covenant by the party for whose benefit it is inserted may be made by parol. Such waiver is held not to be a modification or change in the terms of the original agreement, but is deemed within the rule that a contract under seal may be released, surrendered, or discharged by matters in. pais.
The legal nuances of waiver have been the subject of much confusion, especially where, as here, even though there was no consideration, there was an alleged forbearance from performing the condition. In 5 Williston on Contracts, 3rd Ed., beginning at Section 679, the author categorizes a number of different circumstances which the courts have seen fit to call waiver. Among these is where one having the right to demand performance of a condition expressly or impliedly excuses the performance and the other party acts in reliance thereon. Thus, Section 689 states in part:
“ . . . The peculiarity of the doctrine of waiver used in the narrow sense which seems desirable is that effect is given to a promise, express or implied in fact, when, in reliance thereon, action has been taken by the promisee though no consideration is given in exchange for the promise. Not all promises can thus be made enforceable, but a promise to forego the advantage not yet accrued of a breach of condition and sometimes of a breach of a promise may be.
There has been a distinct tendency in courts of equity to enforce promises where something resembling a fraud would otherwise be perpetrated. Nothing could have a more fraudulent operation than to allow one who is bound by a conditional promise to indicate by words or acts, while performance of the condition is still possible, that its non-performance will not affect his own action under the contract, and, subsequently, when in reliance on this statement, the promisee has failed to perform the condition, and the time has passed when it is possible to do so, to set up the failure as an excuse for the non-performance. . . .”
An affirmative instruction by Motsinger to Ginsburg not to go forward with the proposed mobile home zoning would appear to fall within this category.
Ginsburg also contends that the action of Motsinger in having caused the property to be rezoned for use other than mobile homes within the two-year time period estops him from relying upon the provision that mobile home zoning must be accomplished. Such conduct may not, in and of itself, constitute an estoppel, but it would certainly be competent evidence to corroborate the contention that Motsinger had changed his mind about the desirability of mobile home zoning • and had called Ginsburg off. The evidence might further demonstrate that having had the entire land rezoned for other uses had the practical effect of hindering performance of the condition if it had not already been waived. Cf. 5 Williston on Contracts, 3rd Ed., Section 677. In any event, the matter cannot be resolved without a trial on the merits. *512 Wagner v. Bonucelli, Fla.App. 4th, 1970, 239 So.2d 619.
The summary final judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
MANN, C. J., and McNULTY, J., concur.