DALE McANELLY, Plaintiff-Appellant, *v.* LEONARD GRAVES *et al.*, Defendants-Appellees.

Fifth District   No. 83—244

Opinion filed August 7, 1984.

Keith W. Kibler and Paul Thomas Austin & Associates, both of Marion, for appellant.

Winters, Garrison, Brewster, Permar, Speroni & Murphy, of Marion, for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Dale McAnelly, brought the instant action as lessee under a coal lease to recover an advance royalty payment made to lessors Leonard and Sandra Graves. Following execution of the lease, the lessors had transferred their interests in the leased property to defendants William Carlton and Bi-State Coal Company, Inc. (Bi-State). Carlton, one of the lessors' successors in interest, terminated the lease without refunding the advance royalty payment as provided by the lease, and the plaintiff subsequently sought recovery of this payment against both the original lessors and their successors in interest, Carlton and Bi-State. The trial court, upon motion by defendants Carlton and Bi-State, dismissed with prejudice those counts of the plaintiff's complaint directed towards them, and the plaintiff has appealed from that ruling. We reverse.

From the record on appeal it appears that the plaintiff, on June 13, 1979, entered into a coal lease with Leonard and Sandra Graves under which the plaintiff was given the right to conduct mining operations upon property owned by the Graveses for a period of five years or such longer time as he needed to mine all removable coal from the property. Under the terms of the lease, the plaintiff made an advance royalty payment to the Graveses of $35,000 to be credited against

later payments of earned royalties. The lease provided that the Graveses as lessors had the right to terminate the lease if the plaintiff had failed to begin mining operations within 24 months after execution of the lease. In the event of such a termination, $30,000 of the advance royalty payment was to be refunded to the plaintiff, with $5,000 to be retained by the lessors as rental for the use of the property during the period of inactivity. The lease further provided that it was "subject to" the lessee's obtaining all necessary mining permits and stated that, if such permits were not issued, the lease was to be of no force and effect and the entire advance royalty payment was to be refunded to the lessee within 15 days. The lease was silent as to what length of time the plaintiff had to obtain the necessary permits. By a further provision the lease was made binding upon the heirs, legal representatives, successors and assigns of both the lessee and lessors.

Sometime after execution of the lease, the marriage of Leonard and Sandra Graves was dissolved, and Leonard Graves transferred his interest in the leased property to William Carlton. The plaintiff alleges that Carlton thus acquired a one-half interest in the subject real estate, although it is unclear from the record what interest was conveyed to Carlton. At the time of the transfer, the coal lease in question had been duly recorded in the county clerk's office.

On an unspecified date in July 1981, William Carlton sent a "Notice of Termination" to the plaintiff in which he purported to terminate the coal lease of June 17, 1979 [sic], for failure to begin mining operations on the leased property within 24 months after execution of the lease. Carlton expressly referred to the clause in the lease providing for such termination by the lessor and signed the notice as "Owner of land and assignee of lessor." Subsequently, on August 6, 1981, Carlton executed a quitclaim deed of his interest in the property to Bi-State. On that same date Sandra Graves, now Sandra Beasley, also conveyed her interest in the property to Bi-State by a quitclaim deed.

On October 20, 1981, the plaintiff brought suit to recover that portion of the advance royalty payment due him under the lease. Count I of the plaintiff's complaint was directed towards the Graveses, while counts II and III sought recovery from Carlton and Bi-State, respectively. Sandra Graves confessed judgment to count I of the plaintiff's third amended complaint and later declared bankruptcy. Defendants Carlton and Bi-State moved for dismissal of counts II and III directed towards them, and the trial court, after hearing arguments of the parties, entered judgment in their favor, finding

that there was no just reason for delaying enforcement or appeal of that judgment. See 87 Ill. 2d R. 304(a).

In this appeal from the judgment of dismissal, the plaintiff contends that, by taking the property in question subject to the existing lease, defendants Carlton and Bi-State became successors in interest to the original lessors and thus were bound by the obligations imposed under the lease. Although there was no express assignment of the lease between the Graveses and defendants Carlton and Bi-State, the plaintiff maintains that the lessors' promise to refund part of the advance royalty payment upon termination of the lease constituted a covenant running with the land, which passed to defendants Carlton and Bi-State upon their acquisition of ownership in the land. The defendants counter, however, that the promise to repay contained in the lease was a personal covenant, binding only upon the original lessors who actually received the advance royalty payment in question. As a further justification for the trial court's ruling, defendants Carlton and Bi-State assert that, under the lease provision making it "subject to" the lessee's obtaining all necessary mining permits, the lease never actually became effective because of the lessee's undisputed failure to obtain such permits. The defendants characterize the provision regarding mining permits as a condition precedent to formation of the lease contract and contend that, by reason of the plaintiff's failure to fulfill this condition precedent, both the original lessors and they as successors in interest were relieved of any obligation to perform under the lease.

■■ Addressing the defendants' latter argument, we note that a condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform. (*Lyntel Products, Inc. v. Alcan Aluminum Corp.* (1981), 107 Ill. App. 3d 176, 437 N.E.2d 653; *Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 430 N.E.2d 620.) Whether an act is necessary to formation of the contract or the performance of an obligation under the contract depends upon the facts of the case (*National Dairymen Association v. Dean Milk Co.* (7th Cir. 1950), 183 F.2d 349, *cert. denied* (1950), 340 U.S. 876, 95 L. Ed. 637, 71 S. Ct. 122; *Lyntel Products v. Alcan Aluminum Corp.* (1981), 107 Ill. App. 3d 176, 437 N.E.2d 653), and where a condition goes solely to the obligation of the parties to perform, existence of such a condition does not prevent the formation of a valid contract. *National Dairymen Association v. Dean Milk Co.* (7th Cir. 1959), 183 F.2d 349; *Richardson v. Snipes* (1959), 46 Tenn. App. 494, 330 S.W.2d 381.

■ Here, the language and circumstances of the lease in question belie the defendants' contention that formation of the contract was dependent upon the plaintiff's obtaining the necessary mining permits. The lease itself did not require the permits to be issued before it became effective (*cf. In re Estate of Albrecht* (1975), 27 Ill. App. 3d 839, 840, 327 N.E.2d 317, 318 (provision that employee "shall be insured" under group insurance policy upon completing application for insurance created condition precedent to formation of insurance contract)) but, rather, reflected the parties' intention to be bound pending the issuance of such permits. (*Cf. National Dairymen Association v. Dean Milk Co.* (7th Cir. 1950), 183 F.2d 349 (requirement of export permit not condition precedent to making of contract but only condition precedent to defendant's obligation to perform).) The lease thus resembled those contracts in which the parties' obligation to perform is conditioned upon the happening of a collateral event, such as approval by a court or commission (see *Watson Brothers Transportation Co. v. Jaffa* (8th Cir. 1944), 143 F.2d 340) or rezoning of property to be conveyed (see *Richardson v. Snipes* (1959), 46 Tenn. App. 494, 330 S.W.2d 381). (See 3A Corbin, Contracts sec. 649 (1960).) In such cases, Corbin states, "it is quite incorrect to say that until the event occurs there is no contract; neither party has the privilege of revocation and no further expression of assent by the two parties is necessary." (3A Corbin, Contracts sec. 649), at 111 (1960).) Under this interpretation of the lease provision, then, we find no merit in the defendants' contention that no contract existed between the parties for lack of the required permits.

■ In this same vein, the defendants assert that issuance of the mining permits was a condition precedent to their obligation to perform under the lease and that, since the lessee had failed to obtain the permits at the time the lease was terminated, they were relieved of any obligation to refund the advance payment as provided by the lease. This argument, too, misapprehends the nature of the condition involved. It is evident that the provision making the lease subject to the issuance of mining permits was included in the lease for the benefit of the lessee to protect him in the event he was unable to obtain the permits necessary to conduct mining operations on the property in question. This requirement was thus a condition precedent to the *lessee's* duty to perform and, as such, could be waived by the lessee, leaving the other parties bound under the contract as if no condition had existed. See 3A Corbin, Contracts sec. 761 (1960); *cf. Richardson v. Snipes* (1959), 46 Tenn. App. 494, 330 S.W.2d 381 (condition in land sale contract requiring rezoning of property to be conveyed could be

waived by buyer for whose benefit it was made); see also *Funke v. Paist* (1947), 356 Pa. 594, 52 A.2d 655; *Major v. Price* (1954), 196 Va. 526, 84 S.E.2d 445; *Johnson v. Lehtonen* (1957), 151 Cal. App. 2d 579, 312 P.2d 35.

▪ As discussed by Corbin, a provision such as that here involved that a contract shall be "null and void" upon failure of a required condition is seldom meant to be taken literally. Rather, the provision is put in to limit the duty of the one to whose benefit the condition inures; "it is not to give a loophole of escape from the contract to the other party. *** Like other conditions, such a condition *** can be waived by the promisor whose duty is conditional. [If the condition is not met], he can overlook defects and still require such performance as is possible. The other party is not discharged from duty, and has no power to free himself from duty." 3A Corbin, Contracts sec. 761, at 518 (1960).

Notwithstanding the plaintiff's failure here to obtain the necessary permits prior to termination of the lease by the defendants, he made no attempt to cancel the lease on this basis and so may be said to have waived the condition that existed in his favor. The defendants, therefore, cannot seek to avoid their obligation under the law for failure of the lessee to satisfy this condition. In addition, the defendants have themselves affirmed the validity of the lease by invoking the provision for termination of the lease upon failure of the lessee to begin mining operations within two years of its execution. Although the termination was actually made by defendant Carlton, defendant Bi-State has claimed the benefit of this termination as successor in interest to Carlton. Where the defendants have thus taken advantage of the right to terminate under the lease, they cannot escape the corresponding duty to refund the advance royalty payment as provided by the lease. (*Cf. Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 574, 299 N.E.2d 521, 530 ("a party cannot affirm a contract in part and repudiate it in part; he cannot accept the benefits on the one hand while he shirks its disadvantages on the other").) For these reasons, we reject the defendants' contention that they were relieved of all liability under the lease for failure of the lessee to obtain the required mining permits.

▪ Having determined that the lease was a valid contract binding upon those coming under its terms, we next consider whether the lessors' promise in the lease to refund a portion of the advance royalty payment upon termination of the lease for failure to begin mining operations within two years constituted a covenant running with the land so as to bind defendants Carlton and Bi-State as successors in

interest to the lessors. It is well settled that a grantee of leased property takes the property subject to the lease, and the rights and liabilities existing between the grantee and the lessee are the same as those existing between the grantor and the lessee. (51C C.J.S. *Landlord & Tenant* sec. 258(2) (1968); *cf. Adkins v. Adams* (E.D. Ill. 1944), 54 F. Supp. 944, *aff'd* (7th Cir. 1945), 152 F.2d 489 (conveyance of property subject to mining lease conveyed fee simple title subject to burdens of the lease. Grantee acquired right to all rents and royalties as well as reversionary interests); see also 26 Ill. L. & Prac. *Mining, Oil & Gas* sec. 78 (1956).) While a grantee will not be bound by a covenant in the lease that is merely personal and collateral to the leased property, both the grantee and the lessee will be bound as against each other by covenants affecting the use, value and enjoyment of the property in question. 51C C.J.S. *Landlord & Tenant* secs. 240, 258(2) (1968).

■ The instant mining lease gave to the lessee the right to find and reduce minerals to possession, with the stated royalty to be paid for the minerals so recovered. (See *Central Pipe Line Co. v. Hutson* (1948), 401 Ill. 447, 82 N.E.2d 624; *People ex rel. Hargrave v. Phillips* (1946), 394 Ill. 119, 67 N.E.2d 281.) The provision, then, calling for a refund of royalties paid in advance for coal that had not been mined went to the very essence of the lease and could not be said to be collateral to the interest there conveyed. While the defendants contend that the promise to repay was a personal obligation of the lessors who actually received the payment in question, it may be presumed that the defendants themselves received credit for the advance royalty in the form of a reduced purchase price for the leased property. Since, under the lease, any royalties paid to the defendants would be offset by the advance royalty already paid, the defendants' lessened interest in the mineral estate should have been reflected in the price paid for the land. (See Armstrong, *Coal: Leasing and Purchase of Mineral Interests*, in Mineral Law, Ill. Inst. Cont. Leg. Educ. sec. 8.13, at 8-35 (1982, Supp. 1984).) The record, however, is unclear regarding this matter, and our holding that the obligation to refund upon termination of the lease constituted a covenant running with the land does not depend upon this assumption.

■ There can be no question that the right to terminate under the lease was itself a benefit that passed with ownership of the land (*cf. Hirschberg v. Russell* (1943), 317 Ill. App. 329, 45 N.E.2d 886 (right to terminate lease upon stated conditions constitutes covenant running with the land and passes to successive grantees of original lessor); see 51C C.J.S. *Landlord and Tenant* sec. 258(2), at 675

(1968)), and it appears that the duty to refund unearned royalties upon termination was a corresponding burden that likewise ran with the land. (See generally *Commissioners of Highways v. United States* (N.D. Ill. 1979), 466 F. Supp. 745, *aff'd in part, rev'd in part* (7th Cir. 1981), 653 F.2d 292 (covenant imposing duty or burden runs with the land as readily as one conferring benefit).) The defendants, upon taking the property subject to the lease, had the option of either waiting until the lease ended by its terms for lack of production after five years or invoking the termination clause so as to gain possession and control of the coal. By exercising the right to terminate under the lease, the defendants acquired an unencumbered interest in the coal that could be sold or leased to a third party. The defendants thus derived a valuable benefit from the right to terminate and must be presumed to have known and accepted the consequences of this action.

■■ Because of our holding that the obligation to refund passed to the defendants as successors in interests to the lessors, we reverse the trial court's judgment dismissing those counts of the plaintiff's complaint directed towards them and remand for further proceedings on the complaint. We note, however, that the plaintiff has sought a refund in the amount of $30,000 in the apparent belief that the entire lease was cancelled by defendant Carlton's notice of termination. From what appears in a rather vague record, though, defendant Carlton had acquired at most a one-half interest in the leased property when he purportedly terminated the lease, and he could not, therefore, have terminated the lease insofar as it extended to property he did not own. Since the original lessors' interest in the leased property was divisible and assignable, we see no reason why the lease could not have been terminated as to part of the property while continuing as to the rest. If so, defendant Carlton's obligation to refund upon termination of the lease would have been reduced proportionately.

Defendant Bi-State, on the other hand, claims to have acquired the property in question free from the lease and its accompanying obligations because it took from defendant Carlton and from Sandra (Graves) Beasley, one of the original lessors, *after* the lease had been terminated by defendant Carlton. Since this termination could only have been effective as to the interest Bi-State acquired from Carlton, the lease would have continued as to the interest acquired from Sandra Beasley and may now have expired by its terms for lack of production after five years. If so, defendant Bi-State would have no obligation as to this portion of the lease and could so assert as an affirmative defense to the plaintiff's complaint. Since, however,

defendant Bi-State also succeeded to defendant Carlton's interest in the leased property, it would be liable in the same way defendant Carlton was for the obligation to refund that passed with ownership of the land. We therefore reverse the judgment of the circuit court of Williamson County and remand this cause for further proceedings.

Reversed and remanded.

WELCH, P.J., and HARRISON, J., concur.