**MUTUELLE GENERALE FRANCAISE VIE, Plaintiff,**

v.

**LIFE ASSURANCE COMPANY OF PENNSYLVANIA, Defendant.**

No. 87 C 10014.

United States District Court, N.D. Illinois, E.D.

June 14, 1988.

Bruce M. Friedman, Alan J. Brill, Charmaine Marlowe, Kroll & Tract, New York City, Mark Wohlberg, Garbutt & Jacobson Assoc., Chicago, Ill., for plaintiff.

Stephen Novack, Mitchell Marinello, Karen Drizin, Novack & Macey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Mutuelle Generale Francaise Vie ("MGF") has filed a seven-count Amended Complaint (the "Complaint") against Life Assurance Company of Pennsylvania ("LACOP").[1] All of MGF's asserted causes of

---

1. After the Complaint was filed and the present motion was fully briefed, Combined Insurance Company of America ("CICA"), an Illinois insurance and reinsurance company, sought and was granted leave to intervene. To assist MGF and LACOP in dealing with regulatory restrictions,

CICA has served as a conduit between them for part of the transactions at issue in this case. CICA holds letters of credit to which MGF and LACOP assert conflicting claims, and it seeks interpleader relief under 28 U.S.C. § 1335(a). Because CICA is not directly involved in the

action, including claims of fraud and breach of contract, arise from a reinsurance contract or "treaty" between the parties.

LACOP has moved to dismiss the Complaint under:

1. Fed.R.Civ.P. ("Rule") 12(b)(6), for failure to state a claim on which relief may be granted;

2. Rules 8(a) and 8(e)(1), for violation of their requirements of "a short and plain statement of the claim" and of a pleading that is "simple, concise, and direct"; and

3. Rule 9(b), for failure to plead fraud with particularity.

For the reasons stated in this memorandum opinion and order, LACOP's motion is granted (even though not all the existing counts are substantively defective).

### Facts [2]

MGF is a French insurance company (¶ 1), while LACOP is a Pennsylvania insurance company with its principal place of business in Chicago (¶ 2). MGF's claims in this diversity action relate to a risk-sharing contractual relationship between the parties, known in industry parlance as a reinsurance treaty. Under such arrangements the reinsured company—here LACOP—transfers or "cedes" to the reinsurer—here MGF—policies that the reinsured has written or assumed from other underwriters. In consideration of receiving the premiums paid by the policyholders to the reinsured,

the reinsurer becomes responsible for claims made on the policies.

LACOP and MGF executed a Reinsurance Agreement (Ex. A, the "Treaty" [3]) requiring LACOP to cede and MGF to accept a certain class of policies written at least during the period between August 1, 1982 and December 31, 1984 (Ex. A Amdt. 1 Art. XIX). More precisely, the Treaty was of unlimited duration but could be terminated by three months' written notice from either party effective not earlier than the December 31, 1984 date (id.). LACOP was required to cede and MGF to accept (¶ 6(1)):

> "credit life and credit disability business written in the United States under the General Agency Agreement with Frank B. Fuhrer and Associates ['Fuhrer']," as specified in an Amendment # 1 executed contemporaneously with the pertinent main agreement.[4]

MGF was to reinsure that business automatically, but the Treaty required LACOP to forward regular monthly account statements giving "all pertinent information" on the ceded business (¶ 6(2)). Beyond the reporting requirements, the Treaty also set out the rates that would be used to calculate the premiums (¶ 6(3)) and required that any addenda be in writing (¶ 6(5)). Additionally, as part of an arbitration provision the parties agreed that "the customs and usages of the business of reinsurance" would be used to interpret the Treaty and

present motion, this opinion largely omits its role in the transactions.

**2.** Rule 12(b)(6) principles require this Court to accept as true all the Complaint's well-pleaded factual allegations, drawing all reasonable inferences in MGF's favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam). Of course, LACOP's pleading contentions also look only to the Complaint. All citations to the Complaint will simply take the form "¶ —" or "Ex.—." Also in the interest of simplicity, this opinion will use the term (for example) "Count 5" rather than the Complaint's more cumbersome "Fifth Claim for Relief Against LACOP" (see, in that respect, the first sentence of Rule 8(e)(2)).

**3.** This opinion uses the term "Treaty" rather than the more neutral "Agreement" to distin-

guish between the two types of reinsurance contracts:

1. This case does involve a reinsurance treaty: "A standing agreement between reinsured and reinsurer for the cession [transfer] and assumption of certain risks as defined in the treaty" (R. Strain (editor), *Reinsurance* 664 (1980)).

2. As an alternative to treaty reinsurance, companies can enter into facultative reinsurance arrangements, under which the reinsurer and reinsured negotiate and reach agreement on the cession of individual risks (*id.* at 652).

**4.** [Footnote by this Court] Actually LACOP was to cede 90% of the applicable business, as the Treaty also required LACOP to retain 10% of the life and disability insurance (Ex. A Sch. I).

that the parties were to "act in all things with the highest faith" (Ex. A Art. XVI).

As n. 1 reflects, the parties utilized another insurance company, CICA, as a technical intermediary for some (though, as will be seen, not quite all) of the cessions (¶ 8). To implement that arrangement CICA and the parties executed complementary reinsurance agreements (Exs. B and C), which were not intended to alter the Treaty substantively (¶¶ 9–11).

MGF also identifies two other parties involved in the transactions. Suburban Management and Consulting Ltd. ("Suburban") acted as MGF's exclusive marketing representative (¶ 6(5); Ex. A Art. XV). All communications between LACOP and MGF were to be transmitted through Suburban (*id.*), and Suburban was to receive 10% of the premiums from MGF (¶ 12). Finally, E.T. Bailey Co. was to receive 2% of the premiums as the broker for the transaction (¶ 13).

In September 1984 MGF exercised its right to terminate the Treaty as of December 31, 1984. LACOP and MGF memorialized the termination by Treaty Amendment No. 2 (¶ 6(6); Ex. A Amdt. 2).

Because the Complaint is so long (205 paragraphs occupying 51 typewritten pages), the details of MGF's allegations are best set out as needed in this opinion's substantive discussion of the various aspects of the current motion. At this juncture it is useful to set out only the essence of the charges:

1. LACOP and Suburban conspired to cede business to MGF beyond the scope of the Treaty and to conceal that practice (¶¶ 17, 29, 37).

2. As part of that scheme, LACOP had Suburban authorize modifications to the Treaty even though LACOP knew marketing representatives such as Suburban were not authorized to do so (¶¶ 31–36).

3. In addition to ceding unauthorized business (and in one instance failing to cede certain business it was required to cede) to MGF, LACOP also violated

many of its contractual obligations (see generally ¶ 159), including:

(a) failing to provide the required account statements in a timely manner;

(b) providing inaccurate and incomplete information; and

(c) improperly administering the receipt and transfer of premiums and the payment of claims.

4. LACOP violated its fiduciary duty under the Treaty—a duty derived from (a) the customs and practices of reinsurance, (b) the contract provision that LACOP was to act "with the highest faith" and (c) the relationship between the parties in which LACOP was acting as MGF's agent (¶¶ 169–75).

*Procedural History*

In November 1987 MGF filed its original complaint, asserting eight claims for relief (including both contract and tort claims). When LACOP filed a motion for dismissal on grounds very close to those in the current motion, this Court did not set a briefing schedule. Instead it identified the obvious defects in the initial complaint in a January 14, 1988 oral ruling.

Though it is really not critical for current purposes (after all, the January 14 ruling was not a final order in any event), the parties hotly dispute the thrust of this Court's remarks. LACOP insists this Court dismissed the original complaint as fatally defective (L. Mem. 1 [5]). MGF takes a more roseate view (M. Mem. 3):

Be that as it may, the Court indicated its belief that there may be merit to certain of LACOP's arguments addressed to the legal sufficiency of the Complaint, and the Court having expressed its views on the issues, MGF determined to file an Amended Complaint to avoid engaging in motion practice....

But the January 14 transcript reveals the rulings were not so tentatively expressed as MGF would like to believe. This Court stated flatly that the complaint as framed did not stand up and detailed the defects in

**5.** Again for simplicity, the parties' memoranda will be identified by their first initials ("M" and "L")—thus "L. Mem.—," "M. Mem.—" or "L. R. Mem.—."

each count. It is of course immaterial that no formal dismissal of the complaint took place (this Court would certainly have done so had MGF pressed the point by refusing to amend). What *is* relevant are the problems this Court initially identified that remain applicable to MGF's second attempt to state its claim.[6]

In any event, MGF did amend. Though it has excised a single count, the pleading has swollen from 17 pages and 69 paragraphs to (as already stated) 51 pages and 205 paragraphs—not counting some 65 pages of Complaint Exhibits. MGF now attempts to state these claims:

Count 1 charging common law fraud;

Count 2 charging constructive fraud;

Count 3 charging negligent misrepresentation;

Count 4 charging substantial breach of contract;

Count 5 charging breach of contract;

Count 6 charging breach of fiduciary duty; and

Count 7 seeking an accounting.

It seeks equitable relief in the form of rescission of the Treaty, as well as actual and punitive damages.

### *LACOP's Contentions*

LACOP urges the Complaint suffers from some if not all of the same defects as its predecessor. It raises a host of challenges:

1. Considered as a whole, the Complaint violates Rule 8.

2. Count 1 fails (a) to allege fraud with the requisite particularity and (b) to state a claim for fraud.

3. Count 2 fails (a) to allege constructive fraud with sufficient particularity and (b) to state a claim, the latter because MGF cannot establish a fiduciary duty on LACOP's part.

4. Count 3 fails to state a claim for negligent misrepresentation because LACOP is not in the business of advising others in their business transactions with third parties.

5. Count 4 fails to state a claim for substantial breach of contract giving rise to rescission of the entire Treaty, as MGF alleges no facts to support that request.

6. Count 5 fails to state a claim for breach of contract, because MGF has not adequately alleged it performed all its required contract obligations (an attack also applicable to Count 4).

7. Count 6 fails to state a claim for breach of fiduciary duty for the reasons stated as to Count 2.

8. Count 7 fails to state a claim for an accounting, because MGF has not established any of the prerequisites for such relief.

Those arguments and MGF's responses will be addressed basically in the sequence in which LACOP has presented them. One preliminary comment is in order. Neither party has seen fit to address the choice of law issue (and this Court's review of the underlying contracts reveals no designation of the applicable law). Because both sides (however unthinkingly[7]) treat Illinois law

---

**6.** MGF does prove partly right. Its reframed pleading plus the detailed briefing by the parties have revealed the potential viability of some of MGF's claims that appeared unsustainable at first blush. That will become evident during the later text discussion.

**7.** It is really astonishing how often counsel (even knowledgeable counsel) are delinquent in perceiving and addressing a subject that should be part of every lawyer's mental checklist in approaching every legal problem. After all, *every* case involves the threshold question of what jurisdiction will provide the rules of decision— even in a case all of whose relevant contacts are with a single jurisdiction gives rise to a choice of that jurisdiction's law precisely *because* that is so. In a diversity case such as this, a court's

initial reference is to the choice of law rules of the forum (here Illinois), which may or may not point to use of the forum's substantive law. Here MGF is a French national headquartered in France; it agrees to receive service of process in any United States lawsuit through a California law firm (Ex. A Art. XX ¶ 2); LACOP is a Pennsylvania corporation said to be headquartered in Chicago (though the Treaty itself says the company is "of Philadelphia"); and the only slim clue the Treaty gives to the relevant situs is its reference to "Eastern Standard Time" (Ex. A Art. XIX), which might seem more consistent with (say) a Philadelphia base for LACOP. Yet neither side appears to have given a moment's thought to what seems such an obvious issue.

as controlling, this Court is free to (and does) treat that as a stipulation for the application of that law (*National Association of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1284–85 (7th Cir.1985)).

### Rule 8

■ LACOP attacks the Complaint under Rule 8, not simply on the basis of its length [8] but also because it is unclear and difficult to follow, includes extraneous material unrelated to its claims and frequently uses colloquialisms and parenthetical additions to its allegations. LACOP also objects to MGF's incorporation by reference of all its factual allegations to each claim it states after setting out its fraud claims, even where the previously stated allegations bear no relevance to the later counts.

Certainly it is difficult to find a total reconciliation between the Complaint as drafted and Rule 8's mandate:

> (a) **Claims for Relief.** A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief....
>
> (e) **Pleading to be Concise and Direct; Consistency.**
>
> (1) Each averment of a pleading shall be simple, concise, and direct.

MGF goes far beyond notice pleading. Its Complaint reads at times more like a novel (not a particularly well-written or well-organized one) or a brief as it advances evidence, theories and speculation about the events in issue. MGF states the vast majority of its substantive allegations up front in 162 paragraphs occupying more than 42 pages. It then proceeds to allege its seven causes of action in reasonably succinct fashion—but reasonably succinct only because each count refers back to *all* the previous allegations.

Undoubtedly such pleading is difficult to answer from LACOP's perspective. MGF includes at times far more than is necessary to state a claim (see for example ¶ 100, set off entirely by parentheses, which seems to be an aside on the profitability of the properly ceded business).[9] MGF also does indulge itself in statements that belong (if anywhere) in an argumentative brief and not a complaint (see, e.g., the ¶ 37 allegation that LACOP and Suburban "resolved to 'make hay while the sun shines' ").

This Court is well within its powers in striking the entire Complaint on the grounds dealt with to this point alone (see, e.g., *Johns–Manville Sales Corp. v. Chicago Title and Trust Co.*, 261 F.Supp. 905, 908 (N.D.Ill.1966)).[10] Accordingly the Complaint is indeed stricken. This ruling spares LACOP the difficult burden of attempting to answer such a prolix complaint. MGF is expected, whether or not it again amends its pleading to cure the substantive flaws to be identified shortly, to clean up its drafting problems. In that respect it should also group its allegations appropriately under the relevant counts (or be properly selective in its incorporation by reference on a count-by-count basis), to spare LACOP from having to sort out which allegations are or are not relevant to particular counts.

### Fraud

LACOP advances two separate grounds to dismiss Count 1—the fraud count:

---

8. True enough, Rule 84 specifically characterizes the terse pleadings set out in the Rules' Appendix of Forms as "sufficient under the rules" and as "intended to indicate the simplicity and brevity of statement which the rules contemplate." But even apart from the reversion from strict notice pleading to a more fact-oriented pleading that has developed in the half century since the Rules were first adopted, some more complex lawsuits obviously demand more space for the assertion of claims than the simple situations dealt with in the Forms. No arbitrary Procrustean measure of length is appropriate.

9. MGF should have traded in that kind of surplus information as a down payment on some essential allegations it has omitted from some of its claims, notably its fraud allegations. More of this later.

10. M. Mem. 5 attempts to distinguish *Johns–Manville* because there the stricken pleading had used 69 paragraphs and 39 pages to state a single count, while this case concerns "eight [sic] counts and seven blocks of business, all of which have different circumstances." As L.R. Mem. 4 correctly notes, MGF prefers to overlook the fact that it used 167 paragraphs and just over 43 pages to plead the *first* of its counts.

1. MGF, as with the original complaint, is still trying improperly to turn a breach of contract action into a tort action.

2. MGF still has not provided sufficient particularity in its fraud allegations to satisfy Rule 9(b).

On the first issue, MGF continues to evince some confusion about what types of claims are properly brought in a tort action. It has made some progress from its first complaint, in which LACOP's alleged contract breaches were asserted as the functional equivalent of fraudulent conduct. MGF has now begun to speak in the language of fraud, alleging false representations of fact (and in some instances fraudulent omissions and half truths). Yet at times it also slips back into viewing LACOP's claimed contract breaches as fraudulent acts in and of themselves (see ¶ 46).

This Court has frequently been called upon to deal with the distinction in Illinois law between facts that state a cause of action for breach of contract and those that can also support tort actions (see, e.g., *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 149–50 (N.D.Ill.1981)). To the extent MGF has attempted to convert a possible contract breach into an instance of fraud, this opinion will later identify those errors in MGF's specific allegations.

But it should also be recognized that MGF is entitled to proceed on a fraud theory where its allegations supply the elements called for by *Soules v. General Motors Corp.*, 79 Ill.2d 282, 286, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980) (citations omitted):

(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.... Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had a right to rely.

By now focusing on LACOP's communications and not just its actions, MGF has brought this case within the realm of a fraud action—leaving aside for the moment any Rule 9(b) problems. Having done so, however, MGF must be aware that the damages it asserts must flow from its reliance on the alleged misrepresentations and *not* simply from any purported contract breach by LACOP.

For purposes of its fraud claim, MGF may also look to statements Suburban allegedly made in furtherance of its conspiracy with LACOP. Clearly a party can be liable for statements it authorizes another party to make, or statements made as part of a conspiracy (19 I.L.P. *Fraud* § 18, at 582–83 (1956); cf. Fed.R.Evid. 801(d)(2)(E)).

In this instance MGF has provided more than a conclusory allegation that a conspiracy existed, thus satisfying the pleading standards in that respect (*Maloney v. Washington*, 584 F.Supp. 1263, 1266 (N.D. Ill.1984), citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981)). Its allegations beginning with ¶ 29 assert the formation and implementation of a conspiracy between Suburban and LACOP, and ¶ 29 itself specifically alleges the establishment of that conspiracy to defraud MGF in meetings and phone conversations in September and October 1983.

LACOP contends MGF cannot advance its conspiracy theory without including a specific conspiracy count in the Complaint (L. R. Mem. 7). But LACOP advances no case law or other support for that proposition. There is no reason MGF cannot utilize a conspiracy element (including the evidentiary advantages that flow from a conspiracy) to establish its fraud claim without also asserting a separate conspiracy count. In sum, MGF has sufficiently alleged its conspiracy theory by assertions subject to all the requirements of the Federal Rules, including Rule 11.

That leaves for consideration the particularity requirement of Rule 9(b). Because that analysis calls for a particularized look at MGF's allegations, it provides the most convenient occasion for examining whether MGF has improperly assigned a fraud label to nonfraudulent conduct.

Consequently this opinion will treat with MGF's allegations in the order and categories in which they have been presented—grouped by the block of ceded policies they concern.[11] There is no mystery as to the operative pleading standard: Rule 9(b)'s "particularity" exception to Rule 8's notice-pleading regime has been well summarized in *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill. 1985) (citations omitted):

> [A]t the least, a plaintiff pleading fraud must "specify the time, place and contents of any alleged false representations, and the full nature of the transaction." ... This should include the identity of the person making the misrepresentations, the content of the misrepresentations, and how the misrepresentations were communicated to plaintiff.

That requirement is tempered by the fact that with complex transactions over an extended period of time, somewhat less specificity is required (*Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, 514 F.Supp. 535, 540 (N.D.Ill.1981)). As this Court put the Rule 9(b) standard in *Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D. Ill.1984) (citations omitted):

> To plead a cause of action for fraud, plaintiffs need not allege evidentiary details that will be used to support the claim at a later date.... They need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations.

Here MGF alleges misrepresentations for more than a two-year period and involving seven different blocks of policies. Its Complaint's sufficiency must be viewed in that context.

---

11. For more than one reason, the length of the following text discussion is a source of regret. It is not that MGF's verbosity is contagious. Rather the discussion is necessary to detail the defects in MGF's fraud allegations as they now stand. Unfortunately MGF has responded to Rule 9(b)'s mandate ("the circumstances constituting fraud ... shall be stated with particularity") by setting out long allegations that can arguably be read as adverting to various false

### 1. CO 500 Business

At ¶¶ 56–63 MGF addresses a group of ceded policies coded "CO 500" that allegedly did not qualify for cession under the Treaty. Nowhere does MGF specify any purported misrepresentation as to that business, either by LACOP or by Suburban acting in conjunction with LACOP. MGF's only hint of a misrepresentation comes in ¶¶ 80 and 104 (which deal with other blocks of business), where MGF parenthetically contrasts such other business with the CO 500 business, which is said to have been "inserted with the F.B. Fuhrer business by LACOP and passed off as such in the documents transmitted to [Suburban]." But in ¶ 56 itself, MGF says LACOP coded the CO 500 business as such in the Fuhrer cession statements. That leaves it quite unclear what constituted any asserted misrepresentation.

MGF may mean the relevant accounting statements purported to cover *only* policies generated by Fuhrer, so that the inclusion of other (apparently non-Fuhrer) business, however labeled, was misleading. But in terms of fraudulent misrepresentation, there is a world of difference between (1) labeling an item accurately in a bill (so the billed party can see it is an improper charge) and (2) mislabeling an item so the billed party is deceived into thinking it a proper charge. At the very least the teaching of Rule 9(b) is that a defendant (and a court) should not be forced to speculate. LACOP is entitled to have MGF specify what was assertedly false about what statements.

MGF also fails to specify which cession statements contained any asserted misrepresentations as to the CO 500 business. MGF may be entitled under the *Caliber Partners–Baselski* approach to some imprecision in identifying the specific fraudu-

representations. MGF never specifies just which representations are incorporated in its fraud count, apparently hoping that if it floats enough potential allegations of fraud, some will survive. To satisfy Rule 9(b), however, MGF must decide which precise acts it is labeling fraud. Neither this Court nor LACOP should have to guess which allegations are part of MGF's overall fraud count.

lent statements, or even each specific document containing a false assertion, but MGF's present total silence in those respects is unacceptable. Apparently the ceding statements arrived at no more than monthly intervals (¶ 6(2)), and MGF should be able to identify with some ease which account statements contain the relevant information. It should be able to set out the time and place of those alleged fraudulent incidents.

## 2. Reliance Business

■ MGF's assertions as to the "Reliance business" (¶¶ 64–73) also suffer from the first problem identified as to the CO 500 business: failure to specify the claimed misrepresentation by which LACOP included the Reliance cessions in its ceding statements. As to that block of policies, MGF does provide some information about which cession statements contain the misrepresentations: In ¶ 66 it says statements containing some Reliance policies began in December 1983, and in ¶ 67 it says information on other Reliance business was included in statements beginning October 1983. Once again, however, the policies were coded "Reliance" (¶ 64), so this opinion's initial comments as to the CO 500 business apply here too.

MGF also says about the Reliance business (¶¶ 68–69) that in January 1986 LACOP began to separate that business from the Fuhrer business, but Suburban then recombined the figures before forwarding LACOP's statements to MGF, thus keeping MGF in the dark about the cession of the assertedly improper business. On their face those allegations seem to negate rather than to evince fraud *by LACOP:*

1. MGF does not assert the recombination by Suburban was done at LACOP's request or in furtherance of the alleged conspiracy.[12]

2. Although MGF says the practice began in January 1986, once again it does not further specify which account statements were affected.

At least at present, ¶¶ 68–69 do not satisfy Rule 9(b).

## 3. Gordon Business

■ In ¶¶ 74–82 MGF says Suburban, in furtherance of the conspiracy, combined allegedly nonqualifying "Gordon Business" with Fuhrer business on statements to MGF in a misleading way. Although LACOP coded those policies "New Business" in its transmittals to Suburban, both of them planned that the latter would then lump the figures into the Fuhrer business in the monthly statements to MGF, thus misleading MGF (¶ 81). Those paragraphs would be sufficient to allege fraud with particularity, except that they too do not specify in which statements Suburban made the misrepresentations (see ¶ 82).

However, MGF successfully attacks another aspect of the Gordon transactions. In late 1985 Suburban "slipped up" and let a statement with the caption "New Business" reach MGF (¶ 83). MGF then complained to LACOP because all new cessions were to stop at the end of 1984 (*id.*). MGF claims LACOP's November 11, 1985 response to that inquiry (¶ 84) constituted fraud.

L. R. Mem. 8–9 correctly points out that MGF does not specify what was affirmatively misrepresented by that letter. That however is beside the mark, for the allegations support a claim of fraudulent concealment. In ¶ 85 MGF alleges the letter offered LACOP the opportunity to explain that the block of policies was non-Fuhrer business. Illinois law holds the concealment of facts constitutes fraud when "done with the intention to deceive under circumstances creating an opportunity and duty to speak" (*Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill.App.3d 933, 938, 80 Ill.Dec. 236, 240, 464 N.E.2d 1219, 1223 (2d Dist. 1984)). If combined with an adequate allegation of a fiduciary duty on LACOP's part, the allegations would thus suffice to

---

**12.** At other points (see, e.g., ¶ 81) the Complaint does explicitly state certain acts were committed by Suburban in furtherance of the conspiracy and with LACOP's knowledge and assent. Under familiar conspiracy law, of course, if the first factor is present knowledge and assent need not be.

state a fraud claim with the requisite particularity.

As will be discussed later in this opinion, MGF has not established a fiduciary duty running from LACOP to MGF over the *selection* as such of policies to be ceded, so as to impose a duty to speak on LACOP. This Gordon situation, however, relates to a different area, one as to which this opinion later finds a fiduciary duty is adequately alleged. Under ¶ 84 (with pro-MGF inferences), the matter is no different than if LACOP had falsely written the "New Business" *was* cedeable Fuhrer business. Hence MGF states a claim for fraudulent concealment in that respect (unlike the PGL–1, PGL–2 and Kennesaw situations discussed later).

### 4. Offshore Business

Next ¶¶ 92–101 deal with "Offshore business," but they do not make out any cause of action for fraud. Though ¶ 97 describes a LACOP letter describing that block of business, MGF identifies nothing false in the letter. Instead MGF seems to suggest the business *was* Fuhrer business properly cedeable to MGF, but LACOP tried to breach the Treaty by first attempting to place the policies with another reinsurer (¶¶ 98–99). Even as a contract breach the claim demands more explanation (after all, MGF seems to have ended up with what it claims it was entitled to). But as a "fraud" claim it is perhaps the best example of MGF's efforts at alchemy.

### 5. PGL–1

Several problems exist with MGF's allegations as to the PGL–1 business. In the first place, this is one of three blocks of business (the others are PGL–2 and Kennesaw) as to which MGF contends their mere inclusion with the Fuhrer business in the billing statements constituted an "implicit representation" that the business qualified

for cession under the Treaty (¶¶ 115, 130, 154).

All such allegations represent MGF's efforts to shoehorn an alleged breach of contract into a tort mold. MGF has provided no case support for such "implicit" representations being actionable in tort. LACOP is entirely correct that this theory would allow a vast majority of contract breach cases to be converted into torts when a party does not announce its breach of contract. Affirmative misrepresentations are actionable, as are failures to speak in circumstances constituting fraudulent concealment.[13] But short of those alternatives, no fraud claim can be stated as MGF would have it. Those allegations are insufficient to state a claim for fraud.

There are also some other difficulties with the PGL–1 allegations. It is enough to state them briefly:

1. ¶ 105 says Suburban, in furtherance of the fraudulent scheme, would recombine figures on the PGL–1 business with Fuhrer business figures before forwarding them to MGF. Once again MGF makes no effort to specify the affected ceding statements.

2. ¶ 108 alleges Suburban, in response to an inquiry about the PGL business, telexed MGF misrepresenting that this business was qualifying Fuhrer business (see also ¶ 116). What MGF does *not* allege is that Suburban was speaking on LACOP's behalf in issuing that telex. ¶ 108 says MGF *understood* Suburban to be speaking for LACOP, and ¶ 110 says the telex purported to be on LACOP's behalf. But MGF does not explain the basis for its understanding and fails to allege the telex was sent in furtherance of the claimed conspiracy. LACOP cannot be held responsible for the telex unless MGF properly alleges its involvement.[14]

13. If Suburban's telex described in ¶ 108 were attributable to LACOP (a matter discussed in the next paragraph of the text), that might conceivably put the PGL business into the same category as to the already-discussed Gordon situation. At least to this Court's inexpert eye, though, more explanation of the insurance concepts in-

volved would be needed to establish that possibility.

14. This should not be viewed as an open invitation to MGF simply to insert a conclusory allegation that the telex was issued on LACOP's behalf in accordance with the conspiracy. MGF and its counsel must remain cognizant of the

3. MGF also fails to say the ¶ 108 telex is another instance of fraudulent concealment. Like ¶ 84 discussed earlier, the telex might perhaps represent an opportunity, deliberately avoided by LACOP, to explain the PGL–1 business. However, MGF has not advanced that theory, and it cannot fairly be inferred from the pleading as it stands.

### 6. PGL–2 Business

As already stated, the just-discussed "implicit representation" problem infects MGF's PGL–2 claim too. There are also three added problems with the PGL–2 allegations:

1. In ¶ 121 MGF attacks false representations by LACOP as to the dates on which cessions of the PGL–2 business occurred. No information is offered as to the time, place or contents of the supposed misrepresentations.

2. ¶ 125 asserts "continued misrepresentations" as to the PGL–2 business, which for some reason LACOP decided to cede directly to MGF without use of CICA as intermediary. But MGF completely fails to specify how or where those misrepresentations were made or specifically what they concerned. It heightens the confusion when it alleges some of the communications went through the broker, E.T. Bailey Co., the first mention of any statements sent from LACOP to MGF via the broker.

3. ¶ 131 also asserts the ¶ 108 telex about the PGL–1 business was an explicit misrepresentation about the PGL–2 business too. That allegation is insufficient for the reasons previously identified.

### 7. Kennesaw Business

■ MGF's allegations about this last block of policies are also deficient in several respects. As before, a brief recapitulation is enough:

1. ¶¶ 136–37 say Suburban, in a June 1984 telex responding to an MGF inquiry over an unexplained bank deposit, misled MGF about the nature of this block of policies. ¶ 137 also attacks Suburban's nondisclosure in the telex that the business originated from the Kennesaw Life & Accident Insurance Co. ¶ 155 then says Suburban falsely stated those cessions, which went directly to MGF without passing through CICA, were in accordance with the original Treaty. Although MGF does not explicitly say the combined statements constituted an instance of fraudulent concealment, that may fairly be inferred from ¶ 137. But the basic problem with all this is that MGF does *not* say the telex was issued by Suburban at LACOP's direction or in furtherance of the conspiracy (contrast ¶ 81). In ¶ 155 MGF alleges without explanation and in direct contradiction of ¶ 136 that the telex was made by LACOP. Without further explanation, responsibility for the telex cannot be laid at LACOP's doorstep.

2. ¶ 142 concerns a December 1986 letter from LACOP that "ingeniously" informed MGF that these policies came from "Kennesaw Life–Accident" and not from Fuhrer. By all accounts that was a true statement and therefore not fraudulent.

3. Finally, in ¶ 147 MGF alleges generally that LACOP intended to defraud MGF over the Kennesaw business. But MGF identifies no further misrepresentations from which to state a fraud claim.

\* \* \* \* \* \*

To sum up, only one portion of MGF's fraud allegations—at least as they are now stated—constitutes a legitimate fraud claim stated with the requisite particularity. Because so little of its existing lengthy narrative would thus survive, the best treatment is to dismiss Count 1 in its entirety with leave to replead once more.

No consideration has been given to a with-prejudice dismissal of the failed claims now, because this time MGF has come closer to pleading several of those instances of

---

strictures of Rule 11. Their allegations must be "well grounded in fact" as uncovered after reasonable *pre*-filing inquiry. And to that end MGF must not forget that Suburban was designated as its agent, and not LACOP's, in the arrangement the parties had set up.

fraud too. In furtherance of the policy favoring disposition on the merits (see 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1281, at 367 (1969)), MGF's revised pleading may also try another time in those respects, if it can do so in good conscience.

### Constructive Fraud/Breach of Fiduciary Duty

Count 2 attempts to state a cause of action for constructive fraud. Under that theory (as opposed to a claim of actual fraud) a plaintiff can substitute proof of a fiduciary relationship for proof of intentional deceit on the part of a defendant (see *Gary-Wheaton Bank v. Burt*, 104 Ill. App.3d 767, 773, 60 Ill.Dec. 518, 525, 433 N.E.2d 315, 322 (2d Dist.1982)). Relatedly, Count 6 also attempts to state a separate cause of action for breach of fiduciary duty by LACOP.

As it did with the original complaint, LACOP contends MGF's well-pleaded factual allegations fail to establish the existence of a fiduciary relationship. Earlier this Court agreed MGF had failed to assert the basis for a fiduciary duty on LACOP's part (Jan. 14, 1988 Tr. 4). MGF now argues its amended allegations demonstrate the relationship of the parties was more than that of an arm's length buyer and seller of insurance policies. As the ensuing discussion reflects, this opinion concludes MGF has still not alleged facts that would make LACOP a fiduciary as to the *selection* of policies to be reinsured by MGF, but MGF has sufficiently alleged LACOP had a fiduciary duty as to the *administration* of the reinsured policies.

With the exception of a single trial level decision to be discussed shortly, Illinois courts have not yet addressed whether a fiduciary relationship exists between a reinsured and a reinsurer. LACOP is correct that a federal court diversity action is not the right medium for expanding the frontiers of state law (*Shaw v. Republic Drill*

*Corp.*, 810 F.2d 149, 150 (7th Cir.1987) (per curiam); *Gust K. Newberg Construction Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1368 (7th Cir.1987)). Under the *Erie v. Tompkins* regime federal courts engage in "rubberstamp jurisprudence" (*Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 930 (N.D.Ill.1985), *aff'd mem.*, 819 F.2d 1143 (7th Cir.1987)). Because federal courts are "ill-suited" to the task of "substantial expansion" of state law (*Gust K. Newberg*, 818 F.2d at 1368), LACOP urges the only Illinois case directly on point, *American Re-Insurance Co. v. MGIC Investment Corp.*, No. 77 CH 1457, slip op. (Cir.Ct. Cook County, Ch. Div. Oct. 20, 1987) does not justify a ruling from this Court declaring LACOP a fiduciary.

*American Re-Insurance* has obvious limitations as a predictive force in *Erie* terms. For one thing, its direct holding involved an application of New York law (though the court also said "Illinois law would be considered where appropriate only because of its existing contacts with this case" (slip op. at 31) and did look to Illinois case law in reaching its conclusion that the reinsured was a fiduciary of the reinsurer (*id.* at 40–43)). That, however, is a minor consideration. What controls is that a single trial level decision, which under Illinois law has no real precedential force, is similarly without meaningful value in this diversity case.[15]

But the mere ability of this Court to disregard *American Re-Insurance* does not do the job for LACOP. None of the cases *it* cites involves reinsurance contracts or establishes that a reinsurance relationship can never incorporate fiduciary duties (see, e.g., *Central States Joint Board v. Continental Assurance Co.*, 117 Ill.App.3d 600, 605–08, 73 Ill.Dec. 107, 111–12, 453 N.E.2d 932, 936–37 (1st Dist.1983)). On the other hand, some Illinois case law generally defining fiduciary relationships would at least suggest MGF should have

---

**15.** In the early days of the *Erie* doctrine, one Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940)) actually required a federal court to ascribe the same precedential force to a New Jersey trial court decision that such a decision would receive in that state's court system under the peculiarities of New Jersey law. But that exceptional result does not obtain under Illinois law.

the opportunity to demonstrate the existence of such a relationship in the reinsurance setting.[16] For that purpose *Paskas v. Illini Federal Savings & Loan Association*, 109 Ill.App.3d 24, 30, 64 Ill.Dec. 642, 646, 440 N.E.2d 194, 198 (5th Dist.1982) (citations omitted) puts the test this way:

> Such a fiduciary relationship may be presumed from the very relationship of the parties, such as in the case of attorney and client or trustee and beneficiary, or may be found to exist in a particular situation where confidence is reposed on one side and there is a resulting superiority and influence on the other side.

 As MGF would have it, its allegations together with the appropriate reasonable inferences would establish LACOP as its fiduciary. But that is simply not so as to the selection of the policies to be reinsured by MGF. Under the Treaty LACOP was compelled to cede, on a mandatory basis, the policies specifically defined in the Treaty itself (¶ 6(1)). Those policies would be reinsured with MGF automatically and immediately (¶ 6(2)).

Indeed, the essence of the Complaint is that LACOP strayed from the strict terms of the Treaty in ceding policies not permitted under the parties' agreement. LACOP's responsibilities in that respect were effectively ministerial. To be sure, MGF may have expected LACOP to perform its contractual obligations, but in that respect LACOP was not in a position of superiority or influence to establish a fiduciary duty under cases such as *Paskas*—or, for that matter, even under *American Re-Insurance*.[17]

 That same analysis leads to a different conclusion, however, as to LACOP's administration of the ceded policies. In that regard the parties' relationship is that of fiduciary and principal. Effectively LACOP was MGF's agent in providing information on the ceded policies, forwarding the premiums and investigating and paying claims (see ¶ 159, attacking LACOP's administration of its contract duties). LACOP alone had contact with the policies and policy holders for MGF's account. Under the Treaty MGF was entitled to place its "highest faith" in LACOP (Ex. A Art. XVI). In that sense and to that extent, MGF placed its confidence in LACOP's fair administration of its Treaty responsibilities, and LACOP was in a dominant and influential position in carrying out its reporting and administration obligations.

Accordingly MGF can maintain its claim for breach of fiduciary duty in Count 6 only to the extent it questions LACOP's administration of the ceded policies.[18] MGF cannot, however, maintain Count 2 for constructive fraud, which attacks only LACOP's actions as to which policies were ceded and the information LACOP provided about which policies had been ceded.

### Negligent Misrepresentation

 Count 3 asserts a claim for negligent misrepresentation by LACOP—a cause of action of much narrower scope than its expansive label would suggest.

---

16. All the same, MGF seriously overplays its hand when it asserts Illinois law is so clear on this point as to render LACOP's denial of a fiduciary relationship a violation of Rule 11 (M. Mem. 27–28). As the text discussion shows, MGF's success on that issue must depend on applying established precedents of a general nature to a wholly new situation. Except for *American Re-Insurance*, no Illinois court has *ever* called a reinsured the fiduciary of its reinsurer (and *American Re-Insurance* itself did not purport to find any prior authority to that effect). It is thus absurd for MGF to say that principle is "so well ingrained in the law" as to make LACOP's conduct sanctionable. Indeed, such a statement itself borders on a Rule 11 violation.

17. It must be remembered that the scope of the automatic cessions under the Treaty was all the business written by the Fuhrer agency for LACOP—*not* policies selected by LACOP. In sharp contrast, the treaty in *American Re-Insurance* gave total control over the choice of the risks to be reinsured to the reinsured itself. Thus the distinction this opinion establishes as to the area of LACOP's potential fiduciary responsibility is in total accord with *American Re-Insurance*.

18. As with the rest of this opinion, no final order is involved here. But if MGF is minded to try again, its repleading would of course be subject to Rule 11's mandate of prefiling investigation—both legal and factual.

*Greycas, Inc. v. Proud,* 826 F.2d 1560, 1565 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988) (citations omitted) has summarized Illinois cases on this issue and concluded:

> They hold that "one who in the course of his business or profession supplies information for the guidance of others in their business transactions" is liable for negligent misrepresentations that induce detrimental reliance.

Both aspects of the *Greycas*-quoted phrase are essential to such a claim (*Black, Jackson and Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.,* 109 Ill.App.3d 132, 135–36, 64 Ill. Dec. 730, 732, 440 N.E.2d 282, 284 (1st Dist.1982), citing with approval this Court's analysis in *National Can,* 505 F.Supp. at 150):

> 1. Defendant must be in the business of supplying information.
>
> 2. That information must be "for the guidance of others in their relations with third parties" (*Black, Jackson and Simmons, id.*).

MGF tries to satisfy the first of those requirements by showing LACOP had extensive reporting requirements as an essential element of its Treaty obligations and was therefore in the business of supplying information for the guidance of others in their business transactions (M. Mem. 41). Though MGF points to no decision holding a defendant in LACOP's position liable under a negligent misrepresentation theory, Illinois courts have applied the doctrine to parties whose responsibilities do not consist solely—or even primarily—of providing information or advice (see, e.g., *Lehmann v. Arnold,* 137 Ill.App.3d 412, 420–21, 91 Ill. Dec. 914, 920–21, 484 N.E.2d 473, 479–80 (4th Dist.1985) (homeowners' suit against developers for omission in recorded plat)).

But this Court need not decide whether LACOP's reporting obligation is enough for that purpose, for MGF does not even purport to satisfy the second requirement —use of the information in its relations with third parties. MGF's allegations do not begin to address how the assertedly false information misguided it in third-party transactions.

Thus MGF has failed to state a claim for negligent misrepresentation under Illinois law. Indeed, its presentation of its claims against LACOP really shows that cause of action is simply inapplicable to the facts of this case. Because Count 3's legal insufficiency is not curable by amendment, that claim is dismissed with prejudice.

### Breach of Contract/Substantial Breach of Contract

■■■ Count 5 asserts MGF's breach of contract claims, while Count 4 claims LACOP's conduct "constitutes substantial breach of contract" justifying rescission of the reinsurance arrangements (¶¶ 187–89). LACOP objects that MGF has failed to allege performance of its contract obligations in an adequate manner. *Redfield v. Continental Casualty Corp.,* 818 F.2d 596, 610 (7th Cir.1987) (citation omitted) teaches:

> Although pleading the performance of conditions precedent is necessary to state a cause of action for breach of contract, Fed.R.Civ.P. 9(c) permits a plaintiff "to aver generally that all conditions precedent have been performed or have occurred."

Here ¶ 48 alleges this:

> MGF has at all times performed all its proper and legitimate duties and obligations under its contract with LACOP. . . .

LACOP cavils at the qualifying terms "proper and legitimate."

Contract performance by a plaintiff suing for damages caused by a defendant's breach may be classified in two ways:

> 1. performance of conditions precedent to the defendant's duty to perform; and
>
> 2. total satisfaction of all the plaintiff's duties of any kind under the contract.

This Court finds MGF's allegation of its contract performance adequate from either perspective. MGF's language is tantamount to saying that any failure to perform is excused under governing law (cf.

*Redfield,* 818 F.2d at 610 (plaintiff must allege performance *or* an excuse for failure to perform)).

Little discussion is required as to Rule 9(c)'s pleading requirement of the plaintiff's performance of each *condition precedent* to a defendant's performance—each obligation (*McAnelly v. Graves,* 126 Ill. App.3d 528, 532, 81 Ill.Dec. 677, 679, 467 N.E.2d 377, 379 (5th Dist.1984) (citations omitted)):

> that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform.

All LACOP points to here is MGF's admitted rejection of LACOP's demands for claims due under the reinsured policies.[19] That may well support a LACOP counterclaim, but nothing suggests MGF's payment of claims is a condition precedent to LACOP's obligations of ceding the proper policies and fulfilling its reporting requirements. Despite MGF's admission that it is now withholding the payment of claims under the challenged cessions, its breach of contract action can proceed.

That same analysis calls for rejection of LACOP's pleading attack from the other perspective—that of MGF's total contract satisfaction. For one thing, LACOP offers nothing to suggest a plaintiff is compelled to allege as much. But even if MGF must do so,[20] *Redfield,* 818 F.2d at 610 allows a plaintiff to allege "performance of all conditions precedent generally or provid[e] an excuse for his failure to perform." And as already stated, ¶ 48 may fairly be read in that sense.

■ All this means Count 5 clearly survives. As for Count 4's "substantial"

breach of contract claim, though, MGF proffers no support under Illinois law (or any other law) for rescinding the entire Treaty because of LACOP's alleged contract breaches—no matter how egregious they may be. MGF offers only the assertion that "Illinois recognizes the concept of partial rescission" (M. Mem. 48)—really a tacit admission that it has no basis for requesting total rescission. If MGF is ultimately successful in proving LACOP has improperly ceded policies beyond the scope of the Treaty, those cessions may perhaps be undone (or what is essentially the same thing, MGF may recover equivalent monetary damages). But MGF advances no grounds for wiping out the entire contract. Count 4 is dismissed with prejudice.

### Accounting

■ LACOP's final challenge is to MGF's Count 7 request for an accounting as to all policies ceded. No disagreement exists over the prerequisites for such a cause of action (*People ex rel. Hartigan v. Candy Club,* 149 Ill.App.3d 498, 500–01, 103 Ill.Dec. 167, 169, 501 N.E.2d 188, 190 (1st Dist.1986) (citations omitted)):

> To sustain an action for an accounting in equity the complaint must allege the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature.

Although MGF has failed on virtually all of its fraud claim to this point, this opinion has upheld its allegations of a fiduciary relationship as to the administration of the ceded policies. Moreover, MGF's allega-

---

**19.** LACOP charges MGF has stopped all payments, even on the admittedly authorized cessions (L. Mem. 15–16). At various places in its pleading (see, e.g., ¶ 73) MGF alleges it has stopped payments on the assertedly unauthorized cessions to avoid aggravating its damages. True enough, ¶ 62 suggests a broader holdback, but ¶ 63 implies MGF is holding up payment only on the CO 500 business "pending an appropriate determination by this court." Any distinction in the nature of MGF's nonpayment (in terms of authorized versus unauthorized cessions) may have relevance later in this case, but

for now the fact of nonpayment does not derail MGF's breach of contract claims.

**20.** Rule 9(c)'s specific reference to "conditions precedent" might perhaps be viewed as creating the inference (by negative implication) that the satisfaction of other conditions need not be alleged. Although neither litigant has addressed that question, this opinion will nonetheless give LACOP the benefit of the doubt by assuming the need for such an allegation by MGF.

tions of LACOP's inaccurate bookkeeping practices (see ¶ 159) demonstrate a need for discovery of the true state of accounts between the parties, further supporting a claim for accounting. LACOP's motion to dismiss Count 7 is denied.

### Conclusion

Because in nearly every respect the Complaint fails to state a cause of action for fraud or otherwise fails to plead fraud with particularity, and because of the substantial reworking needed to limit MGF's assertions to its still-viable claim, Count 1 is dismissed. MGF's failures to state claims for constructive fraud, negligent misrepresentation and substantial breach of contract require the dismissal of Counts 2 through 4. Count 6, the fiduciary-breach claim, is dismissed as to LACOP's responsibilities regarding the selection of policies to be reinsured by MGF but not as to LACOP's administrative duties regarding the ceded policies. Finally, LACOP's motion addressed to Count 5 (breach of contract) and Count 7 (accounting) is denied.

Because of the major surgery required both (1) to excise the dismissed claims or, where appropriate, to try to restate them and (2) to clean up the pleading problems addressed in the early stages of this opinion, the Complaint is stricken in its entirety. MGF is ordered to file its Second Amended Complaint on or before June 28, 1988, and LACOP is ordered to answer or otherwise plead within 21 days of actual delivery of that new pleading to its counsel. This action is set for a status hearing at 9 a.m. July 28, 1988.